[Civ. No. 12233. Second Appellate District, Division One.—June 27, 1939.]

CLARENCE J. MOQUIN, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, Respondent.

Edward J. Trevey for Petitioner.

Everett A. Corten for Respondent.

WHITE, J.—This cause is before us upon the application of the above-named petitioner to review an award made by the Industrial Accident Commission in favor of the Western Auto Supply Company and Lumbermen's Mutual Casualty Company.

The record shows that the petitioner was employed as an appliance service man by Western Auto Supply Company, at Santa Barbara, California; that on July 29, 1938, while acting in the course of his employment, petitioner in company with a fellow employee was delivering an electric refrigerator; that while such refrigerator was being carried upstairs in the residence of the purchaser thereof petitioner, according to his testimony, slipped, and the weight of the refrigerator was thrown in its entirety upon one of his legs, causing peti-

tioner to sustain a hernia, a cure of which was finally effected through surgery. There is in the record evidence that petitioner completed the delivery and installation of the refrigerator and when he thereafter straightened up he felt a sharp pain on the left side of his body up to the waist; that when he was walking back to the delivery truck his coworker noticed that petitioner was limping and inquired of him as to the cause thereof, to which the latter replied that he had strained himself when he lost his footing while carrying the refrigerator upstairs. Petitioner's testimony in this regard was corroborated at the hearing before the commission by his fellow employee. The Santa Barbara store manager of petitioner's employer testified that he had observed petitioner at his work every day, and that he did not observe any evidence of physical disability prior to July 29th, but that when petitioner returned to the store shortly before the noon hour, the manager observed petitioner limping and asked what was the matter, to which inquiry petitioner related the facts hereinabove narrated. The store manager further testified that he suggested petitioner see a doctor, but the latter thought he would be all right and did not think the injury was serious. According to petitioner, while he remained on the job, his pain continued, and while taking a bath several days later he noticed a lump in his groin. Reporting this fact to the store manager, he was directed to see a doctor, and did consult his own physician on the fifth of August, one week following the injury. This doctor's examination revealed a left indirect inguinal hernia which extended to the external inguinal ring, but not through it. Surgery was recommended. This information was communicated to the store manager, who relayed the same to the company, and petitioner was later directed to another physician, whose examination of petitioner revealed the same condition found by his own doctor, and a recommendation for an operation was made to the insurance carrier. On August 22d the insurance carrier informed petitioner of its refusal to assume any liability in the premises.

Petitioner testified positively that he had been under no physical disability nor had he incurred any strain or observed any hernial condition on his body prior to July 29th. The record contains a letter from still another physician who had fully examined petitioner some six months prior to the date of the injury, in connection with an application for an in-

surance policy, and such physician stated that at the time there was no evidence of hernia. Petitioner's physician, whose experience in the practice of medicine extended over twenty-four years, during which time he handled several hundred hernia cases, testified before the commission that it was his positive opinion that the hernia condition revealed by the examination of August 5th was of very recent origin. It may be said that no testimony whatever was introduced to show that petitioner was suffering from any physical disability prior to July 29th.

Respondent commission rests its case upon the established doctrine that the commission was the sole and exclusive judge of the credibility of witnesses, and that because of certain discrepancies between the testimony of petitioner given at the hearing held by the commission on his application for adjustment of claim and certain other facts and circumstances which were developed in the evidence, it was within the sole province of the commission to determine what credit and weight should be given to the testimony, and that this court is without authority to control a finding or conclusion arrived at by the commission denying credence to witnesses unless it appears that there were no matters or circumstances which at all impaired the accuracy of the testimony. Let us therefore now consider what the commission denominates as "material discrepancies" in the testimony given on behalf of petitioner at the hearing. It appears that at the hearing before the commission there were introduced in evidence statements taken by the insurance company from petitioner and from Milton Nickelson, his fellow employee who accompanied the former on the date of the alleged injury in connection with the delivery of the refrigerator. In the statement of the co-employee, taken August 16, 1938, he stated that "about three days after this" (the occasion of carrying the refrigerator) "Mr. Moquin told me he thought he had hurt himself when he was carrying the refrigerator", while at the hearing before the commission the witness, Nickelson, testified that he thought petitioner may have told him when they got back to the store that he, petitioner, had strained himself on the refrigerator. And again, on cross-examination, the witness admitted that his written statement in this respect was correct. However, an examination by us of the testimony indicates that the aforesaid statement of the witness Nickelson was preceded by the

following: "As we were walking back to the truck I noticed that Mr. Moquin was limping and I asked him what he was limping for. He said he had slipped going up the step. He said his leg hurt him. He had not been limping prior to taking the refrigerator to this residence. We did not discuss it further, but I noticed Mr. Moquin was limping the remainder of the day." This, to our minds, constitutes a corroboration rather than an impeachment of the testimony given by the witness.

Respondent commission further contends that at the hearing before it petitioner stated that he told Nickelson that he had strained himself carrying the refrigerator, and that this statement was made very soon after the occurrence, while on cross-examination he admitted that the statement he had made to the insurance company's representative, wherein it is alleged he fixed a different time for telling Nickelson, was correct. We find no willful design to deceive, for it appears that there was more than one conversation between petitioner and his fellow employee.

It is next contended by the commission that Dr. Horace F. Pierce, the physician to whom petitioner had gone on August 5, 1938, testified that in petitioner's first statement to him the latter claimed that he had strained himself while carrying some storage batteries, while later on he claimed to have been injured while carrying a refrigerator. The doctor's testimony in that regard is as follows:

"Q. Doctor, at the time you examined Mr. Moquin, did he give you any history of this hernia occurring, or allegedly occurring in the course of his employment?

"A. I think I can remember that. When he first came to me he said he thought that he was carrying storage batteries, but he was not sure, and then at a later time or the same visit, I have forgotten, he remembered that it must have occurred at the time that he was lifting that ice box.

"Q. Was that the first time that you saw him that he told you that?

"A. I think the first time he saw me he thought it was due to the storage battery, but I am not positive on that point."

Conceding that reviewing courts may not invade the field of the fact-finding body, and that under well settled rules where a conflict in the evidence exists the findings of the triers

of fact are conclusive, it is nevertheless equally well settled that the application of the foregoing doctrine is limited to cases *where the conflict is substantial and real, and not fanciful or fictitious.* ■ We recognize the rule that the burden is upon the applicant to establish the fact of injury; but nevertheless, where, as here, the injury is conclusively proven, but the employer contends it is not a new one and did not occur on the date or under the circumstances alleged, the burden is on such employer to prove his contentions in that regard. While it is true the question of the weight to be given to the testimony of witnesses is one for the commission to determine, the latter may not arbitrarily disregard the testimony of a witness where there is no inherent improbability in the testimony taken as a whole. The facts in the case at bar are very similar in many respects to the situation prevailing in the case of *Singer* v. *Industrial Acc. Com.,* 105 Cal. App. 374 [287 Pac. 567], wherein the court says:

''While it is true that the burden is upon the applicant to establish the fact of injury, still, where the injury is proven, and the employer contends that it is not a new one, but is the result of a former accident, the burden is upon him to prove his contentions. Delay of a few days, as here, in reporting the accident, does not establish non-existence of a new injury. A workman, as most frequently happens, is unfamiliar with the development of injuries of this character and certain symptoms mean little or nothing to him unless they are objective and definitely pronounced. In such a situation the employer is bound by the surrounding facts and circumstances of the case, and where the applicant testifies in relation thereto and his story of how the accident happened is reasonable and not disputed, and such testimony conclusively shows an injury adequately accounted for, it is not overcome by the fact that it might, by some possibility, have resulted from some other cause not shown to exist. While awards cannot be based upon mere guess or conjecture, here there was proof that the origin of the hernia was recent, and when suffered was accompanied by pain; that it was immediately preceded by accidental strain; that it did not previously exist, and the rupture and strain were in close relation. This evidence, without more, is sufficient to compel a finding that the suffered hernia was proximately caused by the accident as testified to. . . . So here, the undisputed facts are

sufficient to make a reasonable man conclude in the applicant's favor upon the vital points, and is adequate to prove his case. It was therefore binding upon the commission, and the latter could not, upon mere conjecture or guesswork, deny compensation."

See, also, *Bussey* v. *Industrial Acc. Com.*, 26 Cal. App. (2d) 211 [79 Pac. (2d) 169].

■ To epitomize the evidence in the case before us, it establishes as facts that petitioner suffered a severe strain with resultant immediate pain; observance by fellow employees of physical infirmities on the part of petitioner; conversations between petitioner and other employees concerning the happening of the accident in the course of employment; continuance of pain and examination by a physician within a week after the commencement of such pain and physical disability; and finally, expert testimony that the hernia condition was of recent origin.

It requires no citation of authority for the statement that these facts established by the evidence may not be disregarded by the commission. The "discrepancies", if such they may be called rather than "inadvertences", in the testimony of petitioner and one of his fellow employees were insufficient to destroy the credibility of these two witnesses and certainly insufficient to destroy the force of the facts proved by other witnesses and circumstances that the suffered hernia was proximately caused by the accident claimed to have occurred on July 29, 1938.

The law under which the respondent commission functions in cases like this is founded upon sound public policy and with the objective of protecting, in a proper case, a workman against economic insecurity. This law favors the payment of compensation, and mere conjecture on the part of the commission that the injury may not be a compensable one should not militate against the employee's receiving this benefit. Here the facts are such as to reasonably support no conclusion other than that the hernia was proximately caused by an accident arising out of and in the course of petitioner's employment.

The award is annulled.

York, P. J., and Doran, J., concurred.