[Civ. No. 7054.   Third Dist.   July 28, 1944.]

JOANNE RUBATTINO, a Minor, etc., Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Rutherford, Rutherford & Rutherford for Petitioner.

Everett A. Corten, Dan Murphy, Jr., Fred G. Goldsworthy,

R. P. Wisecarver, Donald Gallagher and Edmund J. Thomas, Jr., for Respondent.

W. N. Mullen as Amicus Curiae on behalf of Respondents.

PEEK, J.—Petitioner, the minor daughter of Guseppe Rubattino, deceased, by her general guardian John Delaney, seeks a review for the purpose of annulling amended findings and award of the respondent Industrial Accident Commission.

The commission found that the deceased father of the minor applicant had sustained injury arising out of and occurring in the course of his employment as a miner, the said injury being the disease of silicosis, which proximately caused his death on March 6, 1943.

At the hearing had before the commission it was stipulated by all parties that the entire period of the decedent's employment as a miner, 199½ months, had been worked under exposure. It was further stipulated that of the period of 199½ months, 15 months had been in the employ of J. F. Knapp Corporation, who had operated the Aetna Mine, and 73 months had been in the employ of Great Western Mine, which had been operated by defendants Richard Deter, and Bumstead Mining Company, respectively. The balance of the period of exposure, other than the 88 months, had been in the employ of other mine operators, who were not before the commission as parties defendant.

In order to simplify calculation the commission doubled the figure of 199½ months to 399½ months, and correspondingly doubled the total of 88 months to 176½ months. Award was made of 176/399ths of the maximum benefit allowable ($4,159.96 and $150 for burial expenses) or $1,577.06 and $54.88 respectively, against the insurance carriers of the employers before the commission. No award was made for the balance, or any part thereof, against the other employers.

The petitioner challenges such apportionment on the grounds that the commission exceeded its jurisdiction when it so apportioned the liability over the entire period of the employment during which the decedent was found to have been exposed to dust; that there is no evidence that the decedent was in any way affected by the disease of silicosis prior

to his employment at the Great Western Mine during 1928; that in order for the commission to make a finding as regards the existence of such disease it is necessary that there be scientific evidence to that effect and not conjecture; that the only basis for the apportionment is found in section 4663 of the Labor Code, which provides that ''In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury,'' and that, therefore, in the absence of any evidence of disease existing prior to his last two employments the award herein cannot be sustained in that the above cited section calls for findings of the existence of the disease and aggravation thereof by subsequent employments.

The record before this court discloses that decedent's employment as a miner began in 1908, and that from such date until 1942, he worked intermittently at such employment, finally quitting work in January, 1942, because of his physical condition which was diagnosed as the disease of silicosis.

It appears from an unverified written statement of decedent, which was received in evidence, that he had no physical examination either before going to work or upon quitting at any of the mines at which he had been employed. His only illness during such time occurred when he was stricken with influenza while working at the Aetna Mine and was off from work for approximately three months. Employment in several different mines followed, and from 1928 to 1935 he worked at the Great Western Mine near St. Helena, which mine was then operated by defendants Richard Deter, and Bumstead Mining Company respectively. His work in this mine was both on the surface and underground. Following that the employee did outside work for Union Lumber Company at Fort Bragg.

In 1936 frequent colds and chills caused him to consult a physician. X-rays of his chest, taken by Dr. George J. Wood of St. Helena, disclosed that he was suffering from tuberculosis. As a result of such diagnosis he spent several months in the Silverado Sanitarium on Mt. St. Helena, and was discharged therefrom on December 19, 1937. He did not work again until April 15, 1938, when he was again employed at the Aetna Mine, then operated by defendant J. F. Knapp Corpo-

ration, and he worked there steadily until January, 1942. He quit because of his weakened condition. An examination by Dr. M. M. Booth of St. Helena, on February 21, 1942, disclosed that he was suffering from the disease of silicosis, and he was so advised by his physician.

On September 1, 1942, decedent filed his application for adjustment of his claim for workmen's compensation with respondent commission. Additional employers were named as defendants upon the motion of the commission but no service was had upon any of them because of the lack of information of their whereabouts. Upon the hearing of that claim the commission found that the date of injury was February 21, 1942; that more than six months having elapsed between the date of injury and the filing of his claim for compensation, and no disability indemnity having been paid or medical treatment furnished, the claim was barred by the statute of limitations.

Mr. Rubattino died on March 6, 1943, the cause of his death being silicosis, and on April 6, 1943, petitioner herein, as the minor and wholly dependent child of the decedent, filed her claim for compensation death benefits.

At the hearing of her petition it was agreed that the record in the proceeding filed by the decedent would be considered as a part of the record in the present case. It also was stipulated as follows:

"REFEREE: Let the record show that the parties stipulate that the exposure in this case may be taken at a total exposure of 199½ months, of which fifteen months were with J. F. Knapp, insured by Industrial Indemnity Exchange, and seventy-three months were with Great Western Mine, covered by State Compensation Insurance Fund; that the fraction which may be used in calculating the apportionment is 176/399, of which 30/399ths is chargeable to Industrial Indemnity Exchange and 146/399ths to State Compensation Insurance Fund."

At the conclusion of the hearing the commission found that the decedent, while employed as a miner in certain named mines during the period from 1909 to February, 1942, "sustained injury arising out of and occurring in the course of said employment, said injury consisting of the disease known as silicosis as the result of exposure to silica dust during a

period of 199.5 months, proximately causing death on March 6, 1943,'' and that the applicant waived any claim against any of the named mines except the Great Western Mine, which was insured by the State Compensation Insurance Fund, and the Aetna Mine, which was operated by J. F. Knapp Corporation, insured by the Industrial Indemnity Exchange, ''due to the fact that she has been unable to ascertain whether said employers were insured, and due to the difficulty in obtaining collectible judgments.''

The commission then made its award in favor of petitioner in the total sum of $1,577.06, divided between the two mining companies in the proportions as previously mentioned. A petition for rehearing was filed with the commission and was denied. Thereafter a writ of review was sought in this court to annul such award.

The questions herein presented are all involved with and relate to the determination of the one question. In the absence of evidence of demonstrable silicosis due to exposure to silica dust, did the commission exceed its jurisdiction when it apportioned liability for the death of Rubattino over the entire period of his employment as a miner, or did the stipulation previously quoted furnish sufficient evidence in regard to the dust conditions of his previous employments to substantiate such apportionment?

The petitioner argues that the total lack of such evidence in the record is not cured by said stipulation inasmuch as it merely refers to ''exposure,'' and therefore entirely fails to establish the necessary elements of the quantity and quality of such exposure; that the portions of decedent's testimony and written statement relating to dust conditions in the various mines is not complete; that it refers only to some, not all of said mines; that the medical testimony is likewise of little value; that from the time he first began his employment as a miner in 1909 until 1918 when he was afflicted with influenza, his history shows that of a normally healthy individual; that from 1918 until 1937, when he entered the Silverado Sanitarium for tuberculosis, his history is likewise of the same character, and that it was not until February 1942, when he was so advised by Dr. M. M. Booth of St. Helena, that he had any knowledge of silicosis. A letter from Dr. Wood, upon whose advice he entered the sanitarium in 1937, dated September 25, 1942, and addressed to the Medical Department of

the State Compensation Fund, which letter was received in evidence, states:

"It is my impression that Mr. Rubattino had bilateral pulmonary tuberculosis and some silicosis at this time."

It is to be noted, however, that the letter from Dr. Wood is dated subsequent to the death of Rubattino, and that the information contained therein relative to the existence of silicosis was not communicated to the decedent at the time he was examined by said doctor in 1937. The only apparent reason for his confinement to the sanitarium at that time was his tubercular condition.

It is further contended by petitioner that as the previously mentioned evidence is all that the record discloses regarding dust conditions, recourse to medical testimony would be necessary to establish the existence of the disease prior to February 1942, and that mere exposure would not be sufficient to warrant a finding that the initial exposure in 1909 was the inception of the disease. In this regard petitioner argues that at the time decedent was admitted to the sanitarium in May 1937 for a tubercular condition, his attending physician was able to discover only "some silicosis."

Petitioner strenuously urges that it was incumbent upon the commission to find, upon complete evidence, when the disease of silicosis first prevailed; that its general finding to the effect that the disease attached in 1909 merely by exposure to silica dust without evidence in regard to the duration, quality or intensity of such exposure, was without the jurisdiction of the commission, and for the same reason a finding that the disease prevailed at any time prior to decedent's employment at the Great Western Mine in 1928 (14 years prior to his disability) had no foundation, and therefore cannot be sustained. In support thereof petitioner relies upon the case of *Moquin* v. *Industrial Acc. Com.*, 33 Cal.App. 2d 511, 515 [92 P.2d 413], wherein the court stated:

"Conceding that reviewing courts may not invade the field of the fact-finding body, and that under well settled rules where a conflict in the evidence exists the findings of the triers of fact are conclusive, it is nevertheless equally well settled that the application of the foregoing doctrine is limited to cases *where the conflict is substantial and real, and not fanciful or fictitious*. We recognize the rule that the burden is upon

the applicant to establish the fact of injury; but nevertheless, where, as here, the injury is conclusively proven, but the employer contends it is not a new one and did not occur on the date or under the circumstances alleged, the burden is on such employer to prove his contentions in that regard."

The record discloses evidence that Rubattino worked in various mines over a period of years prior to his going to the sanitarium in 1937 and also prior to his last employment, but there is no evidence to support a finding that he had contracted silicosis before his employment with the Great Western Mine. The character of the conditions under which he worked is revealed solely by his testimony and his unverified statement, which are, at best, most meager, and contain nothing from which even an inference may be drawn that his health was impaired or could have been impaired by such conditions or that he had a disease at that time which could have been aggravated by his last employment, thereby bringing him within the provisions of section 4664 of the Labor Code.

In the case of *Moore Shipbuilding Co.* v. *Industrial Acc. Com.*, 70 Cal.App. 495 [233 P. 392], the commission found that the employee had sustained injury from lead poisoning while employed by his last employer but held that the compensation should be apportioned in accordance with the time worked by the employee "under exposure to lead," thereby including the Moore Company.

On review the district court stated:

"The power of the Commission to apportion the liability among several employers under the terms of the section cited [Subd. 4, § 3, Workmen's Compensation Act, Stat. 1917, p. 831, as amended by Stat. 1919, p. 911 (now § 4663 of the Labor Code)], is limited to a 'case of aggravation of any disease existing prior to any such injury' . . .

"The apportionment of the award against the petitioner was based solely on the conjecture that while employed by petitioner the applicant *might have* contracted the disease to some extent. But the direct testimony of the applicant showed that he had no symptoms of the disease while in the employ of the petitioner . . . . It follows that the Commission exceeded its jurisdiction." (A petition for a hearing before the Supreme Court was denied.)

*In the present case respondent commission, though not directly attacking the conclusion of the two cases last cited,*

endeavors to evade the effect thereof by predicating its case almost solely upon *Marsh* v. *Industrial Acc. Com.*, 217 Cal. 338 [18 P.2d 933], a case wherein two applicants filed claims for death benefits as the result of silicosis, while a third made application for compensation benefits for the same cause. The commission denied all of the applications upon the sole ground that each was barred by lapse of time under the provisions of the Workmen's Compensation Act. The only issue on review, as stated by the court, was "a determination of this question."

The respondent commission acknowledges that the rule established in the Marsh case, *supra,* was for the sole purpose of applying the statute of limitations to cases of latent disease or latent injury. But it argues that as the date of injury as therein stated is the date of the culmination in the disability of the accumulated effects of the latent disease that therefore death benefits should be apportioned over the entire period of employment. The commission also admits that "it is necessary, in order to establish liability for compensation, that it be ascertained in what prior employment, or employments, the silica dust, which eventually culminated in disability and death, was inhaled." As we have noted, the record discloses no substantial evidence of the prior employments in which silica dust was fatally inhaled. This omission, the commission argues, was cured by the stipulation that the decedent had been "exposed to silica inhalation for 199½ months." However, the stipulation does not say "exposed to silica inhalation" nor does it refer to exposure to a particular quantity and quality of silica dust. It is merely that "exposure in this case may be taken at total exposure of 199½ months."

The respondent Industrial Indemnity Exchange raises but one issue and states that inasmuch as it believed its insured, the Aetna Mine, did not represent a silicosis hazard, and as a determination of such question would have necessitated a long drawn out trial, it therefore agreed that "the exposure to silica hazard" was as set forth in said stipulation. Thus it contends there are presented to this court but two questions. (1) "Is the stipulation of counsel of parties of any sanctity; that is, may the Industrial Accident Commission rely upon it in lieu of proof" and (2) "Is a stipulation of facts some evidence on which the Industrial Accident Commission may enter a findings and award and which may therefore not be reviewed by an appellate court. . . ."

■ We are entirely in accord with the contentions made by said respondent and with cases cited in support of its statements that a stipulation may be relied upon as evidence. But where the facts contained in such a stipulation are either insufficient or immaterial to a determination of the issues presented, the stipulation itself cannot endow such facts with materiality or sufficiency.

■ Subdivision 1 of section 283 of the Code of Civil Procedure states that an attorney may bind his client in any of the steps of a proceeding by his agreement filed with the clerk or entered upon the minutes. Obviously, therefore, such section relates only to the power of an attorney to bind his client. The question of the sufficiency of that to which he attempts to bind his client is a question for the courts.

■ Even assuming that from the wording of such stipulation it may be inferred that it was to cover 199½ months of exposure to silica dust, it still would lack the sufficiency necessary for a proper determination of the causal connection between the disease and the conditions under which the employee worked and the apportionment of the death benefits as is herein presented.

It is well established by all medical authorities that exposure alone is not sufficient. As stated in Sappington: Medicolegal Phases of Occupational Diseases, page 81:

"One may be able to see dust in the air, but the mere observance of it will not give any indication as to the amount of free silica contained in the dust, the particle of dust, nor any fairly accurate estimate of the amount of dust in the air at the time." And again, at page 123, ". . . adequate knowledge concerning the quantity and quality of dust exposure, as well as the length of the employment period, is necessary to establish a distinct causal relationship."

The causal relationship mentioned by Sappington has also found support in this state in the Marsh case, *supra,* wherein the court stated, at page 351:

" ' . . . In order to justify an award for disability or death due to an occupational disease, *there must always be established an unbroken causal connection between the injury and the employment or the condition under which the employee is required to carry on his work. The connection must be such as to show that the disease or injury was proximately caused by the employment or the conditions of work;* and when such

unbroken chain of causation is found to exist, then all physical consequences flowing from the disease or injury are proper elements for consideration in determining the merits of a claim for compensation or death benefits. *Madore* v. *New Departure Mfg. Co.,* 104 Conn. 709, *supra* [134 A. 259]; *Cishowski* v. *Clayton Mfg. Co.,* 105 Conn. 651 [136 A. 472]; *Kovaliski* v. *Collins Co.,* 102 Conn. 6, *supra* [128 A. 288]; *London G. & A. Co.* v. *Industrial Acc. Com.,* 202 Cal. 239, 241 [259 P. 1096, 54 A.L.R. 1392]; *Singlaub* v. *Industrial Acc. Com.,* 87 Cal.App. 324 [262 P. 411]. In the cases under consideration the record sufficiently establishes a chain of causation between the conditions of employment and the physical consequences of the disease contracted.' '' (Italics ours.)

This court also recognized this situation when it stated in the case of *Argonaut Mining Co.* v. *Industrial Acc. Com.,* 21 Cal.App.2d 492, 495 [70 P.2d 216]:

''The contributing cause of silicosis is well known to the medical profession and to mining industries. It is prevalent among employees in mines, potteries, stone and slate factories, and in file-cutting and metal-grinding enterprises, where the air is permeated with minute particles of stone, quartz, slate or metal dust which is inhaled to the detriment of the tissues, glands and lungs. Some men appear to be immune from the disease, but a large proportion of those who are engaged in such pursuits are susceptible to silicosis. The incurring and development of this disease depends somewhat upon the constitution of the employee and upon the conditions under which he works. The course of the disease may be rapid or gradual, sometimes extending over a period of several years before the victim is finally disabled for the performance of manual labor. . . .''

The respondent commission further contends that as section 3600 of the Labor Code provides that liability for compensation shall exist against an employer for any injury sustained by his employees arising out of and in the course of employment, and for the death of any employee if injury proximately causes death, that in order that such liability shall exist, the injury must be proximately caused by the employment; that therefore as silicosis is a disease which is the accumulated effect of the inhalation of silica dust, it is the employment, or employments, during which silica dust

was inhaled, which are the employments proximately causing the injury.

With such contention there can be no disagreement. However, an obvious question immediately presents itself, i. e., what is the factual or evidentiary basis for such a conclusion in the present case? We have already determined that the record is devoid of substantial evidence in this regard. We have likewise found that said stipulation is not sufficient to cure such lack of evidence. The conclusion, therefore, is inescapable that no evidence either by stipulation or otherwise was before the commission upon which it could base its findings.

But the respondent commission argues that although it is true, as petitioner contends, that "the period of exposure is not controlling," and that "there is no evidence of any silicosis being present in the body of her father prior to his employment at the Great Western Mine in 1928," yet it is contended that as "no examination was made prior to that time," and because of the insidious nature of the disease, this merely meant that "the effects of the inhalation had not progressed to the point at which her father's health was noticeably affected."

Such argument falls squarely within the issues raised by petitioner that the finding and award by the commission, because of the total lack of evidence of the dust condition of the mines is therefore pure speculation of lay minds upon a question which could be solved only by scientific evidence, but that no such evidence appears in the record whatever.

In the quoted portion of the Argonaut case, *supra*, this court held to the same effect, that the nature of the disease is such that "Some men appear to be immune. . . . The incurring and development of this disease depends somewhat upon the constitution of the employee and upon the conditions under which he works." The course of the disease is not necessarily slow but may be rapid as was the situation in the Marsh case, *supra*, where the exposure of the three parties involved was a year and two months, one year and one month, and eleven months, respectively.

The only scientific medical evidence herein, other than the previously mentioned letter of Dr. Wood, was that of Dr. M. M. Booth, who examined the decedent in February, 1942, and in his communication to the commission under date of September 28, 1942, stated:

"There is no doubt in my mind that the silicosis had been existent probably for quite a few years. . . . As far as estimating the period of years that this condition has been existent I feel that it is impossible."

Dr. Jesse L. Carr, pathologist, of San Francisco, who performed a post-mortem examination of the lungs of the decedent, wrote to the commission on March 11, 1943, in part as follows:

"There is considerable age and sequence here and much of the fibrous tissue is extremely old and hyaline."

On March 18, 1943, he further informed the commission by letter, in part as follows:

"The disease sequence as reflected in the slides here is an extremely long and old one and has been developing for a matter of years."

Obviously, therefore, the conclusion of the respondent commission "that its procedure, as followed in the present case, which is that of apportionment of liability for compensation over all the employments in which exposure to silica dust and its consequent inhalation is proved to exist, is a proper procedure under the statute and the decisions of our courts. Each such employment contributed to the eventual disability and each had a part in proximately causing the resulting injury," is entirely untenable in that the record discloses no actual evidence of inhalation of silica dust—all that appears are the statements of Doctors Wood, Booth and Carr.

The brief of the respondent State Fund argues upon the authority of *Blanchard* v. *Industrial Acc. Com.*, 68 Cal.App. 65 [228 P. 359], which it contends first enunciated the rule in this state of "apportionment of liability" among successive employers, and specifically quotes that portion of the decision wherein the court, in commenting upon subdivision 4, section 3 of the Workmen's Compensation Act (now section 4663 of the Labor Code), stated:

"Under this section it was plainly the duty of the Commission to apportion the award of compensation among the respective employers."

The Blanchard case involved a question concerning the liability of one who had become afflicted with what is commonly termed "glassblowers' arm." It appears from the report of that case that Blanchard had contracted the disease in his

right arm while in the employment of his first employer, and knew it, but continued to work on, though with less efficiency, during his two remaining employments until finally he was compelled to quit. The commission determined that he had a certain percentage of total permanent disability and awarded him a sum which was apportioned among the three employments. Upon review by the District Court of Appeal, the court stated: "The purpose of this petition is, therefore, to seek the annulment of that portion of the Commission's award which prorates the compensation between the three employers. . . ." The court then proceeded with a discussion of the Labor Code, and held as above quoted.

It should be noted from a factual standpoint that there was involved an *aggravation* of a *previous disease* which first manifested itself at the time of his original employment and continued on through the remaining employments until he was ultimately forced to stop working. Though the court did state that under such section and such circumstances it was the duty of the commission to apportion the award, yet, nevertheless, in so doing it was required to "exercise a discretion *based upon the evidence* of the various periods of employment. (Italics added.)

It also should be noted that in said section 4663 which the court therein quoted, and which it declared made plain the duty of the commission to apportion the award, contains neither the words "apportion" or "prorate" or any words of similar import.

The purposes for which that section was enacted to accomplish might well be construed to have been a paring down of liability rather than the imposition thereof. This observation is not intended as a criticism of the court's conclusion in the Blanchard case but to emphasize that that conclusion was based on two grounds. As specifically mentioned in the case it was based not alone on the subdivision specifically referred to as its support but also on the facts previously reviewed but not mentioned, which reveal that the liability for compensation rested upon the earlier employers. This court does not interpret the Blanchard case as either holding or declaring that section 4663 authorized the spread of the burden of compensating an employee injured by an occupational disease upon previous employers who, but for the subdivision, would

have no liability. Our conviction that said section is not to be construed as creating a liability is fortified by a further decision, *Moore Shipbuilding Company* v. *Industrial Acc. Com., supra,* rendered by the same court six months after the opinion in the Blanchard case.

The balance of the brief of the respondent State Fund is given over entirely to an academic discussion of the disease of silicosis. In such discussion excerpts from various medical books and journals upon medical jurisprudence are quoted. It is the evident intent of such citations to emphasize the progressive nature of the disease. But it must be noted that in each of such authorities emphasis also is placed upon the length of exposure, the degree of intensity of dust during such exposure, or as stated in Cecil, Textbook of Medicine, fourth edition, page 884, and quoted by respondent State Fund:

"As a general rule from 15 to 20 years working exposure to 15 or 20 million particles of pure crystalline silica are required to produce demonstrable silicosis."

While in Gray, Attorneys' Textbook of Medicine, second edition, page 1071, likewise quoted by respondent State Fund in its brief, is found the following statement:

"Investigation must be carried out along three lines before it can be determined that a particular employment is at fault; duration and intensity of exposure, true formula of dust, and actual cause of disability must be known."

After a discussion concerning the necessity that the silica must actually exist in the dust as silicon dioxide, formula $SiO_2$, called "free silica," the text last quoted states:

"It has been established that silica causes silicosis only in the crystalline form . . . combined silica, as silicates, and the host of other chemical substances containing the element silicon, do not lead to silicosis."

It is then stated that:

"Quartz, the principal constituent of sand, is almost universally distributed. We are all exposed to dust containing this compound throughout our lives. Nature has developed a protective mechanism that will care for any ordinary amount, and even excessive amounts for years, before symptoms appear. Russell (3) points out that 10,000,000 particles of dust per cubic foot, with 35% free silica as quartz, is not necessarily dangerous. This produces only a very slight fi-

brosis of the lung, as occurs in practically all people, but without danger as a cause of tuberculosis.

"The U. S. Public Health Service (20) considers from 10 to 20,000,000 particles under 10 microns of granite, 35% quartz, to be reasonably safe, while probably 50,000,000 particles of anthracite, 5% quartz, fails to produce silicosis. Cummings believes 5,000,000 particles of 100% quartz to be safe.

"Particles larger than 10 microns (1/2500 inch) are rapidly removed from the body. Most of them lodge in the nose and throat, and are either spit out or swallowed, ultimately to be eliminated through the intestine. Thousands of others lodge in the bronchi and bronchioles. The mucus membrane lining the air passages has tiny hair-like projections called cilia. · These keep up a continual lashing motion, carrying mucus from the depths of the lung to the throat, where it is either coughed out or swallowed. Most of the silica and other dust is carried along with this stream and leaves the lung.

"The relatively few particles, less than 10 microns (1/2500 inch) in size and thus small enough to pass through the finest bronchioles to the alveoli, and which are not accidentally caught in the sticky mucus on the walls of the air passages are beyond the eliminating action of the cilia. The phagocytic, or 'dust cells' carry some of them to the bronchioles, to be swept out of the lung. Others are carried deeper toward the lymphatic glands near the pleural covering. From here they may be taken still further to the larger bronchial glands."

In summary, Gray concludes that the following points must be specifically investigated:

"1. What degree of exposure to free silicon dioxide was present, making sure that other substances as silicates are not so reported?

"2. How long has exposure continued. . . .?

"3. How long and intensive was exposure during previous employments throughout the patient's life?

"4. Are you sure that a diagnosis has not been made largely on X-ray findings without making certain that other disease is not the real causative factor of symptoms?

"5. Do dust counts show more than 10,000,000 particles per cubic foot, of size less than 10 microns, and containing at least 35% free silica? If a different percentage of silica was present, was there a proportionate number of particles?

"6. Are inhibiting agents present in the dust that will prevent silicosis, as carbon, coal, or clay?"

This court also has noted that the Industrial Accident Commission, by resolution, has adopted a list of "potentially harmful industrial dusts" entitled "Suggested Maximum Permissible Concentrations (Toxic Thresholds)" which parallels the excerpts above quoted, and is as follows:

| "Substance | Unit of measurement | Limit |
|---|---|---|
| Dusts: | Million particles per cubic foot | |
| *Silica (25-35% $SiO_2$) | " | 10 |
| | (0.5 to 5.0 microns) | |
| Silica (over 75% $SiO_2$) | " | 5 |
| | (0.5 to 5.0 microns) | |

*Dust Count (million particles per cubic foot of air) multiplied by percentage of free silica (silicon dioxide), should be less than 5."

If evidence and investigation of three factors, i. e., **duration**, intensity and the true formula of the dust inhaled are necessary, then the conclusion of respondent State Fund "that the existing rule in California is based upon sound principles of medicine" and is a fair and logical rule to follow, is without merit.

Although the apportionment of benefits by the respondent commission, such as was the case herein, has been the policy of the commission, yet this so-called rule has never been approved as such by the courts of this state.

To follow the Marsh case in relation to the limitation of actions is one thing, but to adopt the same rule without qualification as determinative of the question of apportionment of liability between successive employments without sufficient evidence upon which to predicate such a finding, is **quite** another.

We previously have pointed out that the Marsh case, decided purely upon the question of limitation of action, did not depart from the well established principles of evidence but reiterated the necessity of proof of "unbroken, causal connection between the injury and the employment . . . to

show that the disease . . . was proximately'' caused thereby. Likewise, the Blanchard case, relied upon by respondent State Fund, while it did approve the award therein, it did not, in our opinion, authorize the imposition of the burden of compensation of an employee injured by an occupational disease upon previous employers who, but for section 4663, would have had no liability, and such case also reiterated the elementary rule that an award must be ''based on evidence.''

There can be no argument with the statement of the respondent State Fund that silicosis is a disease ''particularly favorable to apportionment,'' and so it is, but because that is true it does not follow that courts should go outside of a record and from pure speculation determine an issue wherein there is involved so many questions of a technical nature without the aid of any evidence whatsoever upon such questions.

It cannot be denied that silicosis is such a disease as to warrant special legislative consideration. Respondents, however, because of the peculiar characteristics of the disease, would have this court assume legislative powers and by judicial decision write into the law substantive changes in the well established and time tried rules of evidence and procedure. Such changes, if any, must come as the result of legislative action, not by the courts.

We conclude that the finding by the commission that the decedent, while employed as a miner, sustained certain injuries (the disease of silicosis) arising out of and in the course of his employment as the result of exposure to silica dust in certain named mines from the date of his first employment as a miner in ''1909 to and including February 21, 1924,'' is not supported by substantial evidence except as to the period from 1928 to February, 1942, when he was employed by the Great Western and Aetna mines respectively. In fact the record of his employments prior thereto is barren either of any evidence of silica dust of the chemical consistency necessary to produce the disease or of any evidence of the disease of silicosis as such. Therefore, any apportionment of the death benefit among decedent's employers prior to his employment at the Great Western Mine in 1928 was without the jurisdiction of the commission. If this were not true it otherwise might be held in all reasonableness that the first imperceptible infiltration of silica dust during early childhood could be likewise included.

The same is true of years spent in industry which have passed without that effect upon the bodily health which constitutes a disease; these years are not to be counted in apportioning the burden which the law places upon industry. Where the line is to be drawn between a healthy condition and a diseased one is, of course, a problem of fact, often difficult to solve with definiteness. An employer, upon whom the facts and the law place responsibility for compensation for silicosis, who would escape a portion of the load on the theory that he alone is not responsible, necessarily has the burden of proving that other employers should share the responsibility. (*Moquin* v. *Industrial Acc. Com., supra.*)

Where it is made to appear that an employment had brought about a case of silicosis which was aggravated by a subsequent employment, the burden of compensating the employee for the resulting disability is properly divided among the employers upon whom liability exists. This is not only supported by the Blanchard case, but also by *Associated Ind. Corp.* v. *Industrial Acc. Com.* (1932), 124 Cal.App. 378, 384 [12 P.2d 1075], where the Blanchard case was cited, and by *Argonaut Mining Co.* v. *Industrial Acc. Com., supra,* where such an award was affirmed as a matter of course.

For the reasons herein stated the award is annulled, and the application is remanded for further proceeding in accord with the views herein expressed.

Adams, P. J., and Thompson, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied September 25, 1944. Shenk, J., Curtis, J., and Edmonds, J., voted for a hearing.