[Civ. No. 9122.   Fourth Dist., Div. One.   Sept. 12, 1968.]

JERRY D. RYAN, Petitioner, v. WORKMEN'S COMPENSATION APPEALS BOARD, POWER REPLACEMENT, INC. et al, Respondents.

*Assigned by the Chairman of the Judicial Council.

Byhower, Longley, Vaughan & Petherbridge and Richard W. Petherbridge for Petitioner.

Everett A. Corten, Nathan Mudge and G. K. Bogue for Respondent.

COUGHLIN, Acting P. J.—Petitioner, Jerry D. Ryan, sustained a "cervical spine injury," industrially caused on January 15, 1966; received treatment from his physician, Dr. Hartelius, under authorization from State Compensation Insurance Fund to June 29, 1966, and thereafter without authoriza-

tion; received temporary disability compensation to June 11, 1966; and applied for further temporary disability compensation reimbursement for self-procured medical services and medical-legal costs. On November 14, 1966, a referee for Workmen's Compensation Appeals Board found Ryan was temporarily disabled for the period beginning January 16, 1966, and ending March 3, 1966; had been adequately compensated for all temporary disability; was not entitled to reimbursement for self-procured medical treatment; and did not reasonably and necessarily incur medical-legal costs. Premised upon these findings the referee made an order that Ryan take nothing further from defendants by reason of his claim. In due course Ryan asked for reconsideration and his request was denied by the board which adopted the opinion of the referee setting forth reasons for denial of reconsideration.

Petitioner complained of pains in the neck which he claimed prevented him from working. He was examined by a number of doctors whose reports were received in evidence. Objective findings negatived the existence of cause for pain. In some of the reports Ryan's claims were described as "bizarre" and "hysterical"; indicated his complaints were the product of a personality defect or emotional overlay; and supported the conclusion the injury sustained was not disabling. A report by Dr. Hunter, for the cost of which Ryan sought reimbursement as medical-legal expense, supported the conclusion Ryan's alleged pre-existing emotional condition was aggravated by the injury. Ryan testified, in substance, the pains he suffered prevented him from working. Motion picture films admitted in evidence showed him engaging in activities which contradicted the existence of the complaints he described to the doctors and in his testimony. A report from Dr. Hartelius dated March 7, 1966 stated: "Mr. Ryan was released for full time duty on March 4, 1966." However, a further report by Dr. Hartelius dated Sept. 15, 1966, stated Ryan was still suffering "intermittent severe pain and stiffness of cervical area," and "is still not able to do his usual and customary work and prognosis is guarded at this time." In a report dated November 4, 1966, Dr. Gianetti summarized the reports of all of the doctors; considered the motion picture films; related the results of his clinical examination; and concluded: "I find myself with no alternative but to label this man frankly as a malingerer."

The referee, in a written opinion, described the industrial injury as a neck sprain "of a minor musculoligamentous

nature''; declared Ryan ''simply did not tell the truth, either in his testimony or in the complaints given to the examining physicians''; expressed the conclusion the ''self-procured costs of treatment, and the medical-legal costs were predicated upon what must have been wilful misstatements of fact,'' and for this reason were not reasonably and necessarily incurred; and found that the period of temporary disability could not have lasted beyond the date on which Dr. Hartelius released Ryan to full time work. Subsequently, the referee, in his opinion accompanying the recommendation Ryan's request for reconsideration be denied, summarized the reasons for his findings in the case as follows:

''This is a clear case of a claim predicated upon fraudulent complaints, both in sworn testimony and in the complaints given to the examining and treating physicians. The costs incurred could not by any rational stretching be termed 'reasonable and necessary.' And the best evidence is that applicant was effectively cured of his injury when Doctor Hartelius released him to work on March 3, 1966.''

Ryan continued to complain of pain; was treated further by Dr. Hartelius who referred him to Dr. Halloran, and in turn was referred to Dr. Edalatpour, a neurosurgeon. A myelogram demonstrated minor changes in the fifth and sixth cervical vertebrae area diagnosed as ''C-5-6 cervical spondylosis with root impairment.'' Dr. Edalatpour, relying more on Ryan's complaints than the objective findings demonstrated by the myelogram, operated; found a ''rather significant spondylosis at the C5-6 level, particularly on the left side,'' which protrusion he had not visualized on the myelogram; removed disc material which appeared fragmented and degenerated; also found the body of ''C-7'' contained a very large osteophyte, or spur, not shown in the myelographic picture; removed the osteophyte; and took other corrective operative measures. The osteophyte ''protruded at least 4 mm. beyond the level of the posterior surface of the bodies'' and constituted a major defect in the area. Dr. Edalatpour was of the opinion the osteophyte was the primary cause of nerve irritation in the area and was consistent with the symptoms described by Ryan. In explanation of the fact the myelogram did not show the existence of the osteophyte, Dr. Edalatpour testified:

''A myelogram is not a foolproof test. It has flaws. None of our neurological tests or any medical test is foolproof. It just so happened that it is so specifically located that it could

annoy the nerve root but not show itself as the defect in the dye column.''

Following his operation, Ryan filed a petition to reopen, pursuant to the provisions of sections 5803 and 5410 of the Labor Code. At this juncture Ryan claimed the condition of the cervical area disclosed by his operation resulted from his industrial accident; disabled him from the date of that accident until his recovery from the operation; necessitated all of the self-procured medical expense he had incurred; and justified the medical-legal costs he advanced. At the hearing reports and testimony from Dr. Edalatpour and a Dr. Weaver were admitted in evidence. No other evidence was presented. Both doctors were of the opinion the condition of the osteophyte causing nerve irritation was attributable to the accident; and the nerve irritation was the cause of pain, disabling Ryan from the time of the accident to recovery from the operation. The opinion of Dr. Weaver supports the further conclusion the osteophyte pre-existed the accident but was aggravated by it with resultant nerve irritation.

The referee made an order granting Ryan's request to reopen; found he ''sustained new and further temporary disability and need for medical treatment,'' the period of disability beginning March 16, 1967, the date of the operation, and ending August 31, 1967, the date of recovery, that self-procured medical costs and treatment by Dr. Edalatpour should be allowed, and that $223.15 medical-legal costs advanced also should be allowed; and made an award accordingly. The issues for determination outlined by the referee at the time of the hearing included the nature, extent and duration of his disability. The affirmative findings of the referee implied negative findings on all other issues. (*Limited Mut. Comp. Ins. Co.* v. *Industrial Acc. Com.*, 37 Cal.App.2d 50, 55 [98 P.2d 827].) The referee, in his written opinion, stated his conclusion the prior determination that temporary disability terminated on March 3, 1966, was correct; and that ''the evidence indicates that the complaints and disability, at least as related proximately to the industrial injury, did not cause disability from work in the period after March 3, 1966,'' except during the period of surgical recuperation.

Ryan petitioned for reconsideration, claiming he should have been awarded disability benefits for the additional period beginning March 4, 1966, through March 15, 1967; all self-procured medical expenses; and all medical-legal expenses. The board denied the petition for reconsideration,

adopting the written opinion of the referee accompanying his recommendation for denial. In this opinion the referee sets forth the basis of his finding Ryan was not disabled by the industrial injury following March 3, 1966, until his surgery on March 16, 1967; asserts his conclusion the motion picture films establish Ryan did not tell the truth about his capabilities; directs attention to the expert evidence in the 1966 hearing, particularly the report of Dr. Gianetti who expressed the opinion Ryan was a malingerer; states: "Nothing was presented in the 1967 proceedings to alter the conclusions reached in 1966"; admits the industrial accident aggravated the preexisting osteophyte condition producing "some disability, thereby justifying the self-procured surgery by Doctor Edalatpour, and the ensuing temporary disability during the recuperation period"; rejects, however, the expert opinions of Doctors Edalatpour and Weaver that the disability up to surgery prevented applicant from working; and bases this rejection upon "a study of the entire record," in "light of the entire record" and upon "a reading of the entire transcript."

The issue as developed by the evidence in the 1966 hearing was whether the neck sprain "of a minor musculoligamentous nature" disabled Ryan after March 3, 1966. The expert opinions that such a disability did not exist were premised upon the fact there were no objective findings to support his complaints of pain. The issue as developed in the 1967 hearing was whether the spondylosis and aggravated osteophyte condition with resultant nerve irritation disabled Ryan after March 3, 1966, to March 15, 1967. The opinions of the experts in the 1966 hearing were evidence only of the effect of the musculoligamentous injury upon Ryan's ability to work, and were not evidence of the effect of the subsequently discovered vertebra and nerve injury upon his ability to work. (*Jones* v. *Workmen's Comp. App. Bd.*, 68 Cal.2d 476, 480 [67 Cal.Rptr. 544, 439 P.2d 648] ; *Winthrop* v. *Industrial Acc. Com.*, 213 Cal. 351, 354 [2 P.2d 142].) An expert opinion is worth no more than the reasons upon which it is based. (*Owings* v. *Industrial Acc. Com.*, 31 Cal.2d 689, 692 [192 P.2d 1] ; *Long Beach City High School Dist.* v *Stewart*, 30 Cal.2d 763, 773 [185 P.2d 585, 173 A.L.R. 249] ; *West* v. *Industrial Acc. Com.*, 79 Cal.App.2d 711, 716 [180 P.2d 972] ; *Blankenfeld* v. *Industrial Acc. Com.*, 36 Cal.App.2d 690, 698 [98 P.2d 584].) The 1966 expert opinions were not probative of the 1967 issue. The board may not "rest a decision on medical

reports that are no longer germane." (*Jones* v. *Workmen's Comp. App. Bd., supra,* 68 Cal.2d 476, 480.)

The motion picture films introduced in evidence at the 1966 hearing recorded the actions of Ryan on three different occasions, i.e., May 19, 1966, July 18, 1966 and July 30, 1966. The pictures taken on May 19th showed Ryan shopping at a grocery, walking in the parking lot, putting boxes into his automobile, and looking under the car. The pictures taken on July 30th showed him doing carpentry work on the house of a friend, for which he received no compensation. The referee found the activities demonstrated in these pictures established he did not tell the truth respecting the complaints related to the examining physicians and in his testimony. The pictures taken on July 18th simply showed him going to and from the Department of Employment, Dr. Edalatpour testified the pain caused by the vertebra and nerve injury he discovered upon operation was intermittent; was not present at all times, under all circumstances; but would prevent the injured person from working a regular schedule. In light of this opinion, the motion pictures, depicting only two incidents of activity by Ryan, alone, did not create a real conflict in the evidence, and did not justify rejection of the opinions of Dr. Edalatpour and Dr. Weaver that the injury sustained disabled Ryan from the time of injury to recovery from the corrective surgery performed by Dr. Edalatpour. (*Moquin* v. *Industrial Acc. Com.,* 33 Cal.App.2d 511, 516-517 [92 P.2d 413]; *Bussey* v. *Industrial Acc. Com.,* 26 Cal.App.2d 211, 212 [79 P.2d 169].) Although the board, in the written opinion prepared by the referee which it adopted, refers to the motion picture films as evidence of Ryan's ability to work after March 3, 1966, its rejection of the opinions of Doctors Edalatpour and Weaver that the cervical spine condition corrected by the operation disabled Ryan from the time of injury to date of recovery from the operation, and its conclusion he was not disabled after March 3, 1966, to date of operation, were predicated upon the "entire record" which, as heretofore indicated, consisted primarily of the opinions of experts who had no knowledge of the spinal injury found by Dr. Edalatpour. The implied finding of non-disability during the period March 4, 1966 to March 16, 1967 must be rejected as "contrary to the evidence, read as a whole. . . ." (*West* v. *Industrial Acc. Com., supra,* 79 Cal.App.2d 711, 718; see also *Pacific Palisades Assn.* v. *Menninger,* 219 Cal. 257, 267 [26 P.2d 303].)

In substantial aspects, the case at bench parallels the situation in *McCoy* v. *Industrial Acc. Com.,* 64 Cal.2d 82, 91-92 [48

Cal.Rptr. 858, 410 P.2d 362], where the court set aside the decision of the commission denying a claim for temporary disability because it relied on medical reports respecting the injury which subsequent surgery showed were erroneous. (See also *Nielsen* v. *Industrial Acc. Com.,* 220 Cal. 118, 122-123 [29 P.2d 852, 30 P.2d 995]; *Winthrop* v. *Industrial Acc. Com., supra,* 213 Cal. 351, 354.)

Although the 1967 order awarded reimbursement for self-procured medical treatment, it did not clearly cover all of the services rendered by Dr. Hartelius. The decision in *McCoy* v. *Industrial Acc. Com., supra,* 64 Cal.2d 82, dictates the conclusion, as a matter of law, Ryan is entitled to reimbursement for the expenses incident to the self-procured treatment furnished by Dr. Hartelius. It would be absurd to hold the treatment given him by Dr. Hartelius was not reasonable or necessary because the true nature of the injury sustained was not demonstrated until the operation. (Cf. *Union Iron Works* v. *Industrial Acc. Com.,* 190 Cal. 33, 40 [210 P. 410].) Were it not for the services rendered by Dr. Hartelius, Ryan would have continued to suffer from the effects of his injury.

██ The award for medical-legal costs totaled $223.15. Ryan contends this amount does not include medical-legal services by Dr. Hunter in the sum of $50 or medical-legal services of Dr. Hartelius in an unstated amount. He made no contention respecting the latter item in his petition for reconsideration by the board and, for this reason, may not urge it before this court. (*Cowell* v. *Industrial Acc. Com.,* 11 Cal.2d 172, 179-180 [78 P.2d 1016].) The 1966 order denied reimbursement for the medical-legal services rendered by Dr. Hunter. These services concerned the issue whether Ryan's claim to disability was a nonindustrial product of personality manifestations. The new facts supporting reopening the case do not concern the personality issue. Under these circumstances, the former order was final and not subject to review in the later proceeding. (*Hogeberg* v. *Industrial Acc. Com.,* 201 Cal. 169, 176 [256 P. 413].)

██ The board and the insurance fund contend the 1966 order was res judicata on the issue of disability. This contention disregards the continuing jurisdiction of the board conferred by Labor Code sections 5803 and 5410. A decision is not res judicata as to subsequently developed facts authorizing reopening the case. In the case at bench, the surgical operation developed new facts respecting the injury sustained and the cause of claimed disability. (*Pullman Co.* v. *Indus-*

*trial Acc. Com.*, 28 Cal.2d 379, 387 [170 P.2d 10] ; *National Engineering Corp.* v. *Industrial Acc. Com.*, 193 Cal. 422, 426-428 [225 P. 2] ; *Union Iron Works* v. *Industrial Acc. Com.*, *supra*, 190 Cal. 33, 46; see also *Jones* v. *Workmen's Comp: App. Bd.*, *supra*, 68 Cal.2d 476, 477.)

The award is affirmed as to the allowance made to petitioner. The cause is returned with instructions to determine the issues of disability from the injury found by Dr. Edalatpour, and of self-procured medical expenses with respect to that injury, in harmony with the views expressed herein.

Whelan, J., and Lazar, J. pro tem., * concurred.