[Civ. No. 21140. Third Dist. June 22, 1982.]

SHASTA CONVALESCENT HOSPITAL et al., Petitioners, v. WORKERS' COMPENSATION APPEALS BOARD and PENNY A. JONES, Respondents.

998

COUNSEL

Files, McMurchie, Foley, Brandenburger & Weill, Linda Brandenburger and Douglas B. Weill for Petitioners.

Leep & Asbill, Ben Leep and M. K. Tescher, Jr., for Respondents.

OPINION

ABBE, J.*—We review a' decision of the Workers' Compensation Appeals Board (hereafter Board) which denied petitioners' request for reconsideration and adopted the report of the workers' compensation judge (hereafter judge). The judge had dismissed petitioners' appeal from a decision of the Rehabilitation Bureau ordering petitioners to pay respondent Penny A. Jones (hereafter real party) temporary rehabilitation benefits for a period extending beyond the 240-week limitation contained in Labor Code section 4656.

Petitioners requested a writ of review which we granted. Petitioners contend temporary rehabilitation benefits pursuant to Labor Code section 139.5 are the equivalent of temporary disability benefits and, as such, subject to the 240-week limitation contained in Labor Code section 4656. We disagree.

FACTS

On January 7, 1976, real party, a nurse's aide employed by petitioner Shasta Convalescent Hospital, sustained an injury in the course of her duties. Petitioner Maryland Casualty Company began paying temporary disability benefits to real party on January 13, 1976. On June 5, 1979, real party's treating physician declared her condition permanent and stationary and stated she would not be able to return to her former occupation.

In May 1980, following a stipulation between the parties, real party was awarded permanent disability benefits commencing June 9, 1979, and further medical treatment to cure and relieve from the effects of her injury. All temporary disability payments had been made through June 5, 1979. By August 26, 1980, real party had received disability payments for 240 weeks. Five years from the date of injury was January 6, 1981.

Real party requested temporary rehabilitation benefits on June 10, 1980. The Rehabilitation Bureau ordered petitioner Maryland Casualty Company to pay rehabilitation benefits to real party commencing June 10, 1980 "through plan completion." The benefits would enable real party to attend classes at California State University, Chico.

---

*Assigned by the Chairperson of the Judicial Council.

Petitioner Maryland Casualty Company continued to pay temporary rehabilitation benefits and plan expenses until January 6, 1981. On that date, it stopped payment of benefits on the ground its statutory obligation had terminated. Real party's rehabilitation plan remained in effect and petitioners continued to pay plan expenses.

The judge dismissed petitioners' appeal from the decision of the Rehabilitation Bureau, relying on Board precedent which had held Labor Code section 4656 does not affect the duration of payment of temporary rehabilitation benefits. In his report and recommendation on the petition for reconsideration, the judge again rejected petitioners' contention that payment of temporary rehabilitation benefits pursuant to Labor Code section 139.5 is subject to the 240-week limitation contained in Labor Code section 4656.

## DISCUSSION

### I

In 1974 the Legislature amended Labor Code section 139.5[1] to require the administrative director to establish within the Division of Industrial Accidents a rehabilitation unit. The duties of this unit, called the Rehabilitation Bureau by the administrative director (Cal. Admin. Code, tit. 8, § 10003, subd. (a)), are (1) "[t]o foster, review, and approve rehabilitation plans developed by a qualified rehabilitation representative of the employer, insurance carrier, state agency, or employee"; (2) "[t]o adopt rules and regulations which would expedite and facilitate the identification, notification, and referral of industrially injured employees to rehabilitation services"; and (3) "[t]o coordinate and enforce the implementation of rehabilitation plans." (Lab. Code, § 139.5, subds. (a)(1), (2), (3).)

Subdivision (c) of section 139.5 provides "When a qualified injured workman chooses to enroll in a rehabilitation program, he shall continue to receive temporary disability indemnity payments, plus additional living expenses necessitated by the rehabilitation program, together with all reasonable and necessary vocational training, at the expense of the employer or the insurance carrier, as the case may be."

Both section 139.5 and implementing regulations (Cal. Admin. Code, tit. 8, § 10001 et seq.) contemplate that a rehabilitation program may

---

[1] All further references are to the Labor Code unless otherwise indicated.

include vocational evaluation, counseling, on-the-job training, retraining, and job placement assistance. (Cal. Admin. Code, tit. 8, § 10003, subd. (f).) The purpose of rehabilitation is to return the injured employee to suitable gainful employment as soon as practicable and as close as possible to maximum self-support. (Cal. Admin. Code, tit. 8, § 10003, subd. (h).)

The employer must report the injured worker's disability status to the Rehabilitation Bureau when the employer or its insurer know it is unlikely the employee will be able to return to his or her usual occupation or to the occupation he or she had at the time of injury, or immediately after expiration of 180 days of temporary total disability. (Cal. Admin. Code, tit. 8, § 10004, subd. (a).) At the same time, the employer shall also notify the employee of his or her potential right to vocational rehabilitation services. (Cal. Admin. Code, tit. 8, § 10004, subd. (b).) The employee's entitlement to temporary rehabilitation benefits "shall commence on the day the employer knew, or with reasonable diligence should have known, of the employee's inability or likely inability to return to his or her usual and customary occupation or to the position he or she was engaged in at the time of injury." (Cal. Admin. Code, tit. 8, § 10016, subd. (a).)

Once the need for rehabilitation is apparent, a qualified rehabilitation representative must develop a rehabilitation plan in consultation with employer and employee at the Rehabilitation Bureau's request. (Cal. Admin. Code, tit. 8, §§ 10003, subd. (d), 10005.) After the employee accepts the plan, the employer is required to prepare a written description of the plan for submission to the bureau. The rehabilitation bureau must approve the plan before it can be implemented. (Cal. Admin. Code, tit. 8, § 10006; see 1 Hanna, Cal. Law of Employee Injuries and Workmen's Comp. (2d ed. 1981) § 1.08, pp. 1-40-1-42.)

The regulations define the payments required by section 139.5 as maintenance benefits, payable at the same rate as the employee's temporary total disability rate, "while the employee is receiving vocational rehabilitation services subsequent to the date the employee's medical condition is permanent and stationary, or the employee would no longer be entitled to receive temporary total disability indemnity." (Cal. Admin. Code, tit. 8, § 10003, subd. (i).) The payments "shall continue during the pendency of vocational rehabilitation services unless the Rehabilitation Bureau otherwise orders." (Cal. Admin. Code, tit. 8, § 10016, subd. (a).)

On occasion, vocational rehabilitation procedures might not be commenced until after the applicant has already become medically rehabilitated and her condition has become permanent and stationary. (*Ponce De Leon* v. *Glaser Bros.* (1977) 42 Cal.Comp.Cases 962; see 1A Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1981) § 19.05[1][a], pp. 19-24.)

Several Board decisions have considered the nature of temporary rehabilitation benefits. In *Tangye* v. *Henry C. Beck and Company and Fidelity and Casualty Company of New York* (1978) 43 Cal.Comp. Cases 3, 7, the Board held section 139.5 does not authorize simultaneous payment of permanent disability and temporary disability; if the injured worker is in a rehabilitation program, the employer is liable for permanent disability payments only after completion of the rehabilitation program. The Board rejected the proposition that the temporary disability benefits provided for in section 139.5 are additional benefits, different from "regular" temporary disability payments. Noting that the statute provides the worker "shall continue to receive" temporary disability, the Board cited its *Ponce De Leon* decision in observing the Legislature did not create a new type of temporary disability benefit.[2] (*Id.* at pp. 6-7.)

*Espanto* v. *Pharmaseal Laboratories and American Motorists Insurance Company* (1980) 45 Cal.Comp.Cases 729, presented the Board with the issue we now face: whether temporary disability benefits pursuant to section 139.5 are subject to the 240-week limitation contained in section 4656.[3] The Board, over one member's dissent, held that section 139.5 benefits are not subject to the limitations found in section 4656. (*Id.* at pp. 730-735.)

---

[2]The Board declared its interpretation of section 139.5 was consistent with section 4650, which provides: "If an injury causes temporary disability, a disability payment shall be made for one week in advance as wages on the fourth day after the injured employee leaves work as a result of the injury; provided, that in case the injury causes disability of more than 21 days or necessitates hospitalization the disability payment shall be made from the first day the injured employee leaves work or is hospitalized as a result of the injury. If the injury causes permanent disability, a disability payment shall be made for one week in advance as wages on the fourth day after the injury becomes permanent or the date of last payment for temporary disability, whichever date first occurs." (*Id.* at p. 7.)

[3]Section 4656 provides in pertinent part: "Aggregate disability payments for a single injury occurring prior to January 1, 1979, causing temporary disability shall not extend for more than 240 compensable weeks within a period of five years from the date of the injury."

The injured worker in *Espanto* was receiving $106 per week in temporary disability benefits while undergoing rehabilitation. The Board, pointing out she would receive only $70 in weekly permanent disability benefits if the rehabilitation benefits were terminated, declared the Legislature could not have intended to limit a worker's right to compensation where the worker could benefit from a rehabilitation program. (*Id.* at pp. 735-736.)

The Board faced this issue recently in *Value Giant Stores* v. *Workers' Comp. Appeals Bd.* (1981) 46 Cal.Comp.Cases 448 (First App. Dist., Div. Two, writ denied.) The judge there had found the injured worker was entitled to temporary rehabilitation benefits, even though more than five years had elapsed since the date of his injury. (*Id.* at p. 449.) Petitioner, seeking a writ of review, argued there was no distinction between temporary disability and temporary rehabilitation disability. Therefore, petitioner reasoned, temporary rehabilitation payments were subject to the limitations contained in section 4656. (*Ibid.*) The Board rejected that contention, holding section 4656 does not terminate the employee's right to receive temporary rehabilitation benefits; the Court of Appeal denied the writ April 17, 1981. (*Id.* at pp. 448-449.)

## II

In 1980, our Supreme Court considered the issue of the proper commencement date for the payment of temporary rehabilitation benefits pursuant to section 139.5. The worker in *Webb* v. *Workers' Comp. Appeals Bd.* (1980) 28 Cal.3d 621 [170 Cal.Rptr. 32, 620 P.2d 618], received rehabilitation benefits commencing on the date he requested vocational services. The court unanimously held an employer has a duty to notify the injured employee of his potential right to rehabilitation, and that temporary rehabilitation benefits are payable from the time the employer knows of the potential need.[4] (*Id.* at pp. 626-631.) The issue in the *Webb* case was when the benefits began, not, as here, when they stop. The court indicated that section 139.5 "was intended to insure each qualified injured worker the opportunity to undergo rehabilitation ... and a right to continued payment of temporary disability benefits from the moment of his choice to undergo rehabilitation" with the "continuance of temporary disability indemnity during rehabilitation." (*Id.* at pp. 628, 630.)

---

[4]The court reached the same result in a companion case, *San Diego Transit Corp.* v. *Workers' Comp. Appeals Bd.* (1980) 28 Cal.3d 635 [170 Cal.Rptr. 40, 620 P.2d 626].

The *Webb* court further indicated that, "[m]oreover, this court has repeatedly recognized that a rule of liberal construction applies to all aspects of workers' compensation law. [Citations omitted.]" (P. 626.)

### III

■ The language of section 139.5 is clear and unambiguous to the effect that a qualified injured workman who is enrolled in a rehabilitation program is entitled to continue to receive temporary disability payments. Where the language of a statute is clear, we should follow its plain meaning. (*Great Lakes Properties, Inc. v. City of El Segundo* (1977) 19 Cal.3d 152, 155 [137 Cal.Rptr. 154, 561 P.2d 244].)

Labor Code section 3202 requires that "the provisions of Division IV and Division V of this code shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." To construe section 4656 as placing a limit on temporary rehabilitation benefits as provided in section 139.5 would not be following the legislative mandate as we are required to do.

We hold, therefore, that the benefits due an injured workman pursuant to section 139.5 are not subject to the provisions of section 4656.

■ The decision of the Board granting real party temporary rehabilitation benefits beyond the expiration of the 240-week five-year period is affirmed.

Evans, Acting P. J., and Carr, J., concurred.

Petitioners' application for a hearing by the Supreme Court was denied August 18, 1982.