[S.F. No. 24479. Aug. 8, 1983.]

RICHARD GENE LeBOEUF, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
ALAMEDA-CONTRA COSTA TRANSIT DISTRICT, Respondents.

**COUNSEL**

Neyhart, Anderson, Nussbaum, Reilly & Freitas and Frank J. Reilly for Petitioner.

Richard J. Cantrell as Amicus Curiae on behalf of Petitioner.

Sedgwick, Detert, Moran & Arnold and C. Gordon Taylor for Respondents.

Samuel E. Meredith, Goshkin, Pollatsek, Meredith & Lee, Leonard J. Silberman and Zonni, Ginocchio & Taylor as Amici Curiae on behalf of Respondents.

## OPINION

BIRD, C. J.—Where an injured worker is found to be less than totally disabled and the Bureau of Rehabilitation (Bureau) subsequently finds the worker not qualified for rehabilitation benefits, does that finding constitute "good cause" to reopen the permanent disability proceeding?

### I.

The facts are undisputed. Petitioner, Richard LeBoeuf, was employed as a bus driver for Alameda-Contra Costa Transit District (A.C. Transit) in 1961. On January 17, 1976, while he was on the job, he was attacked and beaten by four youths. Petitioner not only sustained multiple contusions and abrasions on his face, head and knee, but also developed an anxiety neurosis. The symptoms of this condition are claustrophobia, mental confusion and phobic reactions. As a result, petitioner was unable to return to work and on January 24, 1976, he filed a claim for workers' compensation benefits, including permanent disability benefits. (See Lab. Code, § 4658.)[1]

The first hearing on petitioner's claim, which was limited to the nature and extent of his disability, was held on March 15, 1977. Petitioner and two psychiatrists, Dr. Beaulieu and Dr. Gruberg, each offered testimony concerning various aspects of petitioner's condition and his future employability.

The testimony on petitioner's employability was conflicting. Dr. Beaulieu testified that petitioner was not employable in any capacity because of his inability to cope with pressure, supervision, confinement and schedules. Dr. Gruberg, however, testified that petitioner was not "immobilized from the standpoint of gainful employment" and that he could possibly be employed as a "mailman" or "vaultman for A.C. Transit" or as a bus driver in a "small mountain town."

After the hearing, the workers' compensation judge submitted a request for a recommendation regarding petitioner's permanent disability rating to a workers' compensation rating specialist. The request included "instructions" regarding petitioner's condition which reflected the testimony offered at the first hearing. The "instructions" read as follows: "Anxiety neurosis, manifested by inability to work as a motor coach operator, to be under close and frequent supervision, to work in a confined setting, or to be under a sense of obligation to do a particular thing in a particular way on a particular schedule." On the basis of these instructions, petitioner's age and prior

---

[1] All statutory references are to the Labor Code unless otherwise indicated.

occupation, the rating specialist recommended a permanent disability rating of 60 percent.

Both petitioner and A.C. Transit objected to this recommended rating. Accordingly, a second hearing was held on March 30, 1978, to allow the parties to cross-examine the rating specialist and to offer rebuttal testimony. Petitioner offered in rebuttal the testimony of Dr. Dansker, a rehabilitation counselor. Dr. Dansker testified that in his opinion, few, if any, jobs would be open to petitioner given his condition. Petitioner also offered into evidence a letter from Dr. Dansker to petitioner's attorney in which Dr. Dansker stated that "any individual, under the reviewed set of instructions would be effectively removed from the open labor market."

At the judge's direction, a final hearing was held on December 21, 1978, to determine whether Dr. Dansker qualified as an expert witness. Mr. Antonelli, a rehabilitation consultant, also testified and gave his evaluation of the rating specialist's recommendation and of petitioner's future employability in the open labor market. Mr. Antonelli stated that "a significant number of opportunities" would be available to petitioner.

On March 22, 1979, the workers' compensation judge issued his findings and award. The judge found that the injury petitioner sustained had occurred during the course of his employment and had precipitated an anxiety neurosis. ■ ■ ■ The judge concluded that the neurosis had caused a temporary total disability from the day after the accident until February 8, 1977, the date petitioner's mental status was evaluated by Dr. Beaulieu as permanent and stationary.[2] The judge further found that the anxiety neurosis caused a 60 percent permanent disability, none of which was apportionable to any prior condition and awarded petitioner permanent disability benefits based upon this 60 percent rating.[3]

---

[2] The right to permanent disability compensation does not arise until the injured worker's condition becomes "permanent and stationary." (*Bstandig* v. *Workers' Comp. Appeals Bd.* (1977) 68 Cal.App.3d 988, 996 [137 Cal.Rptr. 713]; *Manning* v. *Workmen's Comp. App. Bd.* (1970) 10 Cal.App.3d 655, 658 [89 Cal.Rptr. 76].)

[3] The judge gave the following reasons for finding petitioner less than totally disabled: "[I]t is clear on the basis of the evidence that applicant's disability is less than total. Applicant is able to socialize and engage in such activities as playing pinochle. He does, however, have a significant impairment which extends further than the inability to drive a bus for defendant transit district. Applicant's expert witness, Dr. Dansker, would appear to be under certain misconceptions regarding the concept of permanent disability in the California rating system. The percentage of permanent disability is not the equivalent of a prediction as to whether an injured employee will, in fact, resume employment. Practically all individuals have inherent limitations with respect to such factors as education, intelligence, personality, stamina, or motivation which will preclude certain employment areas from their consideration whether or not they have been injured. Geographical preferences and economic conditions may decisively affect a given individual's prospects for employment, so that a person assigned a relatively small permanent disability rating may as a practical matter find it virtually impossible to find satisfactory employment. The test concerns the ability to compete with other individuals, not the likelihood of finding and holding a job."

On April 9, 1979, petitioner filed a petition for reconsideration of the permanent disability rating with the Workers' Compensation Appeals Board (WCAB). The WCAB denied the petition on May 9, 1979.[4]

By law, an employer is required to file with the Bureau a work status report on any injured employee who is unlikely to be able to return to his or her usual occupation on a permanent basis. (Cal. Admin. Code, tit. 8, § 10004; see also § 139.5.) The Bureau then makes a determination as to whether the employee is qualified to receive vocational training benefits from the employer.[5] At some point during the compensation proceedings in this case, A.C. Transit forwarded a work status report on petitioner to the Bureau.[6] In addition, A.C. Transit sent the Bureau a number of medical reports on petitioner's eligibility for rehabilitation.

On August 8, 1978, the Bureau issued an order deferring resolution of the question as to whether petitioner was qualified for vocational rehabilitation services. The Bureau stated that the materials submitted by A.C. Transit indicated that petitioner would be eligible for rehabilitation. It noted, however, that because there was a dispute as to the extent of petitioner's disability, any decision on the need for vocational rehabilitation would be deferred until the extent of petitioner's disability was clarified by the WCAB.

On May 3, 1979, A.C. Transit sent a letter to the Bureau advising it that the workers' compensation judge had determined that petitioner was 60 percent permanently disabled. Also enclosed was a copy of the letter written by Dr. Dansker to petitioner's counsel indicating that petitioner was unemployable. (See *ante,* p. 238.)

On January 28, 1980, the Bureau issued its decision and order on petitioner's eligibility for rehabilitation benefits. The Bureau first stated that petitioner "is medically eligible for rehabilitation benefits under Labor Code Section 139.5 inasmuch as he is unable to return to his usual and customary occupation as a bus driver . . . ." The Bureau noted, however, that given the information provided in Dr. Dansker's letter, its "impression" was that

---

[4]Petitioner filed a petition for a writ of review in the Court of Appeal which was denied on January 28, 1980. This court denied his petition for hearing on February 27, 1980.

[5]A "Qualified Injured Worker" is defined as "an employee [¶] (1) The effects of whose injury, whether or not combined with the effects of a prior injury or disability, if any, permanently preclude, or are likely to preclude the employee from engaging in his or her usual and customary occupation or the position in which he or she was engaged at the time of injury, and [¶] (2) Who can reasonably be expected to return to suitable gainful employment through the provision of vocational rehabilitation services." (Cal. Admin. Code, tit. 8, § 10003, subd. (c).)

[6]It is unclear from the record on what date the report was sent.

petitioner would be unable to be returned to suitable gainful employment through vocational rehabilitation services. The Bureau concluded, "In that regard then, he would not be a Qualified Injured Worker . . . ." In essence, petitioner was found not to qualify for vocational rehabilitation benefits.

On January 16, 1981, petitioner filed a petition to reopen the compensation proceedings, arguing that the prior finding of 60 percent permanent disability was erroneous. (See § 5803.[7]) He reasoned that the Bureau's decision that he was totally disabled constituted the requisite "good cause" to reopen his case and increase his rating to 100 percent.

On June 10, 1981, the workers' compensation judge denied the petition to reopen, concluding "as a matter of law that a purported decision by the rehabilitation bureau to the effect that an applicant is no[t] amenable to vocational rehabilitation and hence presumably unemployable cannot by itself constitute good cause to reopen an otherwise final decision of the Board."

Petitioner filed a petition to reconsider the judge's order with the WCAB. On September 14, 1981, the WCAB denied the petition. Two independent reasons for its decision were articulated. First, the WCAB concluded that the Bureau's decision did not constitute new evidence but was merely a different interpretation of the same evidence that was before the workers' compensation judge when he made his initial findings. Second, petitioner's proper remedy would have been to appeal the Bureau's decision that he was unqualified to receive rehabilitation benefits.

Petitioner now seeks review of this decision.

## II.

The primary issue presented by this case is whether, under section 5803, a determination by the Bureau that an injured worker does not qualify

---

[7]Section 5803 provides: "The appeals board has continuing jurisdiction over all its orders, decisions, and awards made and entered under the provisions of this division. At any time, upon notice and after an opportunity to be heard is given to the parties in interest, the appeals board may rescind, alter, or amend any such order, decision, or award, good cause appearing therefor.

"Such power includes the right to review, grant or regrant, diminish, increase or terminate, within the limits prescribed by this division, any compensation awarded, upon the grounds that the disability of the person in whose favor such award was made has either recurred, increased, diminished, or terminated."

for rehabilitation benefits constitutes "good cause" to reopen a prior compensation proceeding to reconsider a permanent disability award.[8]

■ This court has repeatedly recognized that a rule of liberal construction should be applied to all aspects of workers' compensation law. (*Webb v. Workers' Comp. Appeals Bd.* (1980) 28 Cal.3d 621, 626 [170 Cal. Rptr. 32, 620 P.2d 618]; *Judson Steel Corp. v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668 [150 Cal.Rptr. 250, 586 P.2d 564]; *Kerley v. Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223, 227 [93 Cal.Rptr. 192, 481 P.2d 200].) Further, section 3202 specifically requires that "[t]he provisions of Division 4 and Division 5 [of the Labor Code, which include § 5803] . . . be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment."

■ Under section 5803, the WCAB has continuing jurisdiction to reopen a case and, after notice and an opportunity to be heard, to rescind, alter or amend any award upon a showing of "good cause."[9] The cases construing this section have recognized that a variety of factors and circumstances may constitute the requisite "good cause." For example, "good cause" may be established by newly discovered evidence which could not have been produced at the original hearing and which indicates a more extensive disability than that recognized by the original findings. (*Nicky Blair's Restaurant v. Workers' Comp. Appeals Bd.* (1980) 109 Cal.App.3d 941, 956-959 [167 Cal.Rptr. 516]; *Ryan v. Workmen's Comp. App. Bd.* (1968) 265 Cal. App.2d 654, 661-662 [72 Cal.Rptr. 140].) Similarly, a subsequent clarification of the applicable law by a reviewing court which indicates that an employee was originally entitled to a different award than that given is "good cause" to reopen a case and amend an award. (*Knowles v. Workmen's Comp. App. Bd.* (1970) 10 Cal.App.3d 1027, 1030 [89 Cal.Rptr.

[8]The concurring and dissenting opinion suggests that it is "unnecessary" and "premature" for this court to address this issue. It is argued that because the WCAB based its decision "in part" upon petitioner's failure to appeal the adverse Bureau determination, this court "need not, and should not" consider this issue now. Rather, it should "defer judicial comment until an actual controversy has been presented."

However, an "actual controversy" *is* presented by this case. Indeed, the order under review by the WCAB identified this very issue as the only issue it addressed—"[w]hether as a matter of law a decision and order of [the] rehabilitation bureau . . . constitutes prima facie good cause to reopen for the purpose of altering the permanent disability rating previously established . . . ." While the WCAB also adopted respondent's failure to appeal argument, its opinion focused primarily upon the good cause for reopening issue now before this court. In concluding that the reopening was unwarranted under the facts of this case, the WCAB—in the context of an "actual controversy"—clearly articulated its position on the merits of petitioner's case. Under these circumstances, it is not only appropriate but necessary for this court to review the WCAB's resolution of this important question of law.

[9]Ordinarily, the request to reopen must be made within five years from the date of injury. (§ 5804.)

356]; *State Comp. Ins. Fund* v. *Ind. Acc. Com.* (1946) 73 Cal.App.2d 248, 257-259 [166 P.2d 310].)

Moreover, it is well settled that any factor or circumstance unknown at the time the original award or order was made which renders the previous findings and award "inequitable," will justify the reopening of a case and amendment of the findings and award. (*Pullman Co.* v. *Industrial Acc. Com.* (1946) 28 Cal.2d 379, 388 [170 P.2d 10]; *Merritt-Chapman & Scott Corp.* v. *Indus.A.C.* (1936) 6 Cal.2d 314, 316 [57 P.2d 501]; *Bartlett Hayward Co.* v. *Indus. Acc. Com.* (1928) 203 Cal. 522, 532-533 [265 P. 195]; *Nicky Blair's Restaurant* v. *Workers' Comp. Appeals Bd., supra,* 109 Cal.App.3d at p. 955; *Fidelity & Cas. Co. of New York* v. *Workers' Comp. Appeals Bd.* (1980) 103 Cal.App.3d 1001, 1012 [163 Cal.Rptr. 339].)

Here, petitioner contends that the Bureau's determination that he is unqualified to receive rehabilitation benefits constitutes just such a new circumstance. Further, his previous permanent disability award, based on a 60 percent permanent disability rating, is inequitable in light of the fact that he cannot receive rehabilitation benefits. Petitioner asserts that the Bureau's determination that he "may be unable to be returned to suitable gainful employment" should be reflected in the permanent disability award, since that award is a measure of an injured worker's earning capacity. Respondent, on the other hand, contends that the Bureau's determination with respect to petitioner's eligibility for vocational rehabilitation is wholly irrelevant to a determination of permanent disability.

Vocational rehabilitation benefits are among the specific benefits which are included in the "compensation" to be provided by employers to workers who are injured on the job. (§ 3207.) The importance of these benefits in the workers' compensation scheme was recognized by the Legislature in 1974 when the statutory provisions allowing employers to offer vocational rehabilitation benefits on a voluntary basis were amended. ▮ Pursuant to section 139.5, as amended, employers now have a mandatory duty to provide rehabilitation benefits to employees who seek them. (See § 139.5 and Cal. Admin. Code, tit. 8, § 10001 et seq.) The amended statutory provision vests in injured employees a right to receive rehabilitation benefits. (*Webb* v. *Workers' Comp. Appeals Bd., supra,* 28 Cal.3d at p. 628.) The Legislature evidently sought to encourage the fullest possible participation in rehabilitation training by injured workers in order to enable them to return to the work force as soon as practicable. (*Ibid.*)

The statutory scheme envisions that vocational rehabilitation will be provided an injured worker *before* a final decision is reached on the nature and extent of his or her permanent disability. As this court stated in *Webb,* " '[i]t

seems clear that [the Legislature] intended a worker's disability should not be permanent and stationary until he was both vocationally and medically rehabilitated.' " (*Webb* v. *Workers' Comp. Appeals Bd., supra,* 28 Cal.3d at p. 627, quoting from *Ponce De Leon* v. *Glaser Bros.* (1977) 42 Cal.Comp.Cases 962, 968; see also *Tangye* v. *Henry C. Beck and Co.* (1978) 43 Cal.Comp.Cases 3, 7.) This is to ensure that the permanent disability rating upon which an award is based accurately reflects both the permanent medical and vocational disabilities.

Establishing the right to rehabilitation benefits prior to any final determination of a worker's permanent disability is consistent with the general rule that consideration should be given to the injured worker's "diminished ability . . . to compete in an open labor market." (§ 4660, subd. (a); *Mercier* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 711, 716 [129 Cal.Rptr. 161, 548 P.2d 361]; *Abril* v. *Workers' Comp. Appeals Bd.* (1976) 55 Cal.App.3d 480, 486 [127 Cal.Rptr. 483]; *Luchini* v. *Workmen's Comp. App. Bd.* (1970) 7 Cal.App.3d 141, 144 [86 Cal.Rptr. 453].)

In most cases, the provision of rehabilitation benefits will have a significant impact on an injured employee's ability to compete. If job training makes it possible for a worker to compete in a new sector of the labor market for which he or she was previously unprepared, the worker's permanent disability rating and award will reflect this fact. (Cf. *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 234 [110 Cal.Rptr. 144, 514 P.2d 1224], and fn. 10 in which this court recognized that former § 139.5 explicitly provided what is inherent in the current statutory scheme—"the result [of participation in a vocational rehabilitative program] will be a reduced permanent disability rating.")

Similarly, the fact that an injured employee is precluded from the option of receiving rehabilitation benefits should also be taken into account in the assessment of an injured employee's permanent disability rating. Just as retraining may increase a worker's ability to compete in the labor market, a determination that he or she cannot be retrained for any suitable gainful employment may adversely affect a worker's overall ability to compete. Accordingly, that factor should be considered in any determination of a permanent disability rating.

Further, the receipt of or preclusion from rehabilitation benefits should not be disregarded just because the usual order of proceeding was not followed. This is especially true in this case. The WCAB's determination preceded that of the Bureau through no fault of the petitioner. Indeed, the WCAB has suggested that an *employer* may challenge a *prior* award of permanent disability once an employee has completed a vocational rehabilitation program since the employee's permanent disability may have been

reduced. (See *Tangye* v. *Henry C. Beck and Co.*, *supra*, 43 Cal.Comp. Cases at p. 8.) ▮▮ For all these reasons, an *employee* should also be able to challenge a prior permanent disability award where the Bureau subsequently decides that he or she is not qualified for rehabilitation.

The WCAB gave two reasons for rejecting petitioner's request to reopen his case. First, the WCAB reasoned that the Bureau's determination was based upon the same evidence that the workers' compensation judge considered at petitioner's permanent disability hearing. However, it is irrelevant that the Bureau may have based its eligibility decision on the same evidence which the WCAB considered in affirming the permanent disability rating. Petitioner is not contending that the new and significant factor which warrants reopening of his award is Dr. Dansker's letter concerning his future employability or any of the other evidence which was before the workers' compensation judge. What *is* new and significant is the Bureau's determination that petitioner is not qualified to receive *any* rehabilitation benefits. This determination, which is an important one in assessing petitioner's ability to compete in the open labor market, was not available to or considered by the workers' compensation judge. Accordingly, it constitutes "new evidence" not previously available which may render the previous award inequitable. Therefore, there is good cause to justify a reopening of this case. (See *ante*, pp. 241-242.)

The WCAB's second reason for denying petitioner's request to reopen his case was that an appeal from the Bureau's decision was the appropriate remedy. Insofar as such an appeal should precede but not preclude a petition for reopening, this argument has merit.

▮▮ The legislative purpose in enacting section 139.5 was to enable injured workers to participate in rehabilitative training to the fullest extent possible. In furtherance of this goal, the regulations governing rehabilitation specifically provide that an injured worker may appeal to the WCAB an adverse decision of the Bureau.[10] The right of appeal ensures that an injured employee seeking rehabilitative benefits will not be deprived of the opportunity to receive those benefits unless both the Bureau and the WCAB concur that the worker is unqualified. Requiring that an injured worker appeal an adverse Bureau decision before seeking reopening contributes to that goal. The prerequisite of an appeal to the WCAB also enhances the possibility that the employer will provide the most appropriate remedy for an

---

[10]Title 8, California Administrative Code, section 10008 provides:

"(a) Any party aggrieved by a finding, decision or order of the Bureau may initiate proceedings before the Appeals Board [WCAB].

"(b) Any finding, decision or order of the Bureau shall be final unless an appeal is filed within 20 days after service upon the parties."

injured worker who has received an accurate permanent disability rating but is, in fact, qualified to receive rehabilitation benefits.[11]

Accordingly, an injured worker, who the Bureau has determined to be unqualified for rehabilitation benefits, must take full advantage of the appeal provisions of section 10008 in a timely manner before seeking to reopen his permanent disability rating.

## III.

 A permanent disability rating should reflect as accurately as possible an injured employee's diminished ability to compete in the open labor

---

[11]The WCAB contends that allowing reopening under these circumstances will create a disincentive for applicants to present any more than a perfunctory case to the Bureau. The requirement that only an adverse Bureau determination which is appealed can constitute a basis for reopening a case substantially undercuts this argument. However, even if such an appeal were not required, the contention would still lack merit.

First, the duty to report the disability of an injured worker to the Bureau rests initially on the employer. It is the employer who provides the information to the Bureau upon which an initial determination of eligibility is made. It is also the employer who must specify the services that are being provided to determine the employee's eligibility as a qualified injured worker. (Cal. Admin. Code, tit. 8, § 10004.) Further, the employer must include in this mandatory report any documentation of medical or vocational ineligibility which supports its belief that the disabled employee is not qualified to receive rehabilitation services at the employer's expense. (*Ibid.*) The employer also bears the cost of providing whatever rehabilitative services the Bureau finds the injured worker is entitled to receive. If proceedings before the WCAB could not be reopened following an adverse Bureau determination, it is the *employer,* not the employee, who would have an incentive to present a less than accurate picture of the extent of the employee's disability and the likelihood that he or she would benefit from the receipt of rehabilitation benefits.

In addition, if allowing a reopening after an adverse Bureau determination would create a disincentive for an injured worker to make an accurate showing as to his or her qualification for rehabilitation benefits, this disincentive would be no less prevalent when the Bureau determination *precedes* the permanent disability rating hearing. Since this latter sequence has been identified as the "ideal situation" (*Webb* v. *Workers' Comp. Appeals Bd., supra,* 28 Cal.3d at p. 627), the Legislature and the courts have obviously rejected the notion that injured workers will intentionally make weak showings of qualification for rehabilitation benefits to enhance their permanent disability ratings.

Further, there is no assurance whatsoever that a reopening following a finding of ineligibility for rehabilitation benefits will result in an increased permanent disability rating. An injured worker purposefully seeking an improper adverse determination by the Bureau runs the risk that his or her malingering will be detected at the reopened permanent disability hearing. The possibility that the result could be no rehabilitation benefits *and* no increase in the disability rating scarcely creates an incentive for deception.

Finally, this assumption that a disincentive to seek rehabilitation will be created by allowing reopening is based on an unfounded assumption that injured workers would prefer to collect disability insurance than to be rehabilitated and eventually return to work. That belief does a disservice to the working man and woman in California. Further, there is nothing in the record that indicates that a higher permanent disability rating is economically more attractive than the receipt of vocational rehabilitative services and the prospects of increased earnings which rehabilitation offers. Nor is there any other basis in the record for the pessimistic assumption that injured workers would prefer to remain unemployed and collect disability than to reenter the work force as productive members.

market. The fact that a worker has been precluded from vocational retraining is a significant factor to be taken into account in evaluating his or her potential employability. A prior permanent disability rating and award which fails to reflect that fact is inequitable.

In this case, petitioner's permanent disability rating was established prior to a determination by the Bureau that he was not qualified to receive any vocational rehabilitation services. Consequently, the Bureau's subsequent determination that petitioner was not qualified to receive rehabilitation benefits constitutes the requisite "good cause" to reopen the hearing on his permanent disability rating and award.[12]

In keeping with past precedent, this rule will not be applied retroactively.[13] These procedures are available only to injured workers who have not yet received a decision from the Bureau as to their qualification for rehabilitative benefits. However, petitioner's right to appeal the adverse Bureau determination to the WCAB is preserved.

Accordingly, the decision of the WCAB is annulled. Petitioner is entitled to file an appeal of the Bureau determination within the 20-day regulatory time period.[14]

Mosk, J., Kaus, J., Broussard, J., Reynoso, J., and Sims, J.,* concurred.

**RICHARDSON, J.,** Concurring and Dissenting.—I concur with the majority's conclusion that an injured worker must appeal an adverse decision of the Rehabilitation Bureau (Bureau) before seeking to reopen a permanent disability decision. I respectfully dissent from my colleagues' unnecessary discussion of the merits of the potential motion for reopening which might be made should petitioner's appeal from the Bureau's decision prove unsuccessful.

The Workers' Compensation Appeals Board (Board), in denying petitioner's request to reopen, specifically stated that any claim of inequity arising

---

[12]The holding in this case is narrow in scope. If, subsequent to issuance of a permanent disability award, the Bureau determines that a disabled worker is unqualified for rehabilitation benefits, that determination constitutes the requisite "good cause" for reopening the permanent disability proceeding.

[13]Application of new rules and procedures which could result in the reopening of a significant number of workers' compensation cases is often prospective only. (See, e.g., *Atlantic Richfield Co.* v. *Workers' Comp. Appeals Bd.* (1982) 31 Cal.3d 715, 727-728 [182 Cal.Rptr. 778, 644 P.2d 1257]; *Messina* v. *Workers' Comp. Appeals Bd.* (1980) 105 Cal.App.3d 964, 971-972 [164 Cal.Rptr. 762].)

[14]This period will begin as of the date this decision becomes final.

*Assigned by the Chairperson of the Judicial Council.

from the disparity between the rehabilitation and disability determinations was "undercut" because petitioner failed to appeal the rehabilitation decision. In the Board's words, "The time to have raised this point would have been in an appeal from the rehabilitation decision. The inconsistency between the Bureau's decision and the rationale for the judge's decision was clear. An appeal could have resolved the conflict. Thus applicant had his remedy but did not choose to avail himself of that remedy." (Board's Opinion and Order Denying Reconsideration, Sept. 14, 1981, p. 6.) As a result, the decision from which petitioner now appeals was based primarily on petitioner's failure to seek appropriate relief. These circumstances render premature the majority's discussion of what it describes as the "only issue" the Board considered, namely, whether a Bureau determination that an injured worker is not qualified for rehabilitation benefits constitutes good cause to reopen the compensation decision previously rendered by the compensation judge. (*Ante,* p. 241, fn. 8.) We, of course, do not know the outcome of the appeal from the Bureau's determination nor the grounds upon which any decision in that appeal will be based.

The majority, while holding that an appeal of the Bureau's order is a prerequisite to a motion to reopen (*ante,* pp. 244-245), fails to give sufficient weight to the fact that the Board itself primarily relied upon petitioner's very failure to appeal as a basis for refusing to reopen its disability decision. In its conclusion, the Board specifically stated "Applicant's *remedy was to have appealed the decision of the Rehabilitation Bureau and to have asserted the inconsistency between the Rehabilitation Bureau's rationale with the rationale of the judge's earlier decision.*" (Italics added, Board's Opinion and Order Denying Reconsideration, *supra,* p. 7.) My colleagues nonetheless discuss the effect of the Bureau's order, which they admit is not final, and which they have now held did not provide grounds for reopening because it was not appealed. It seems to me that in order to be consistent we should simply reaffirm the requirement that an appeal of an adverse Bureau decision must be taken and remand the case for that purpose. We should leave for a later day the full consideration of the effect of a final refusal to reopen based upon a Bureau decision that rehabilitation is not appropriate.

While believing that any discussion of the merits is dictum, nonetheless I feel it necessary to challenge several aspects of my colleagues' analysis. In my view, the majority errs in its strong implication (*ante,* p. 243) that rehabilitation *must* be provided before a final decision has been made on the extent of a worker's permanent disability. While citing *Webb* v. *Workers' Comp. Appeals Bd.* (1980) 28 Cal.3d 621, 627 [170 Cal.Rptr. 32, 620 P.2d 618], quoting from *Ponce De Leon* v. *Glaser Brothers* (1977) 42 Cal.Comp.Cases 962, 968, to buttress their assertion, my colleagues fail to

note the important qualifying language in that case: " 'However, the ideal situation above referred to *will not always occur.* For any number of reasons vocational rehabilitation procedures may *not* start before the applicant has been medically rehabilitated and has become stationary from a purely medical standpoint.' " (*Webb,* at p. 627, citing *Ponce De Leon,* at p. 968, italics added; see also, 1A Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1981) § 19.05[1][a], pp. 19-24.) In fact, both the Board and the Court of Appeal have considered the question of entitlement to temporary rehabilitation benefits in cases where a permanent disability determination has been made before rehabilitation proceedings have commenced, demonstrating that such cases are not infrequent. (See *Ponce De Leon, supra,* 42 Cal.Comp.Cases at pp. 968-969; *Shasta Convalescent Hospital* v. *Workers' Comp. Appeals Bd.* (1982) 132 Cal.App.3d 997, 1002 [183 Cal.Rptr. 602].) Similarly, the majority itself attempts to fashion a rule for application in instances where the "usual" progression has not occurred (see *ante,* p. 244), despite its apparent requirement that rehabilitation determinations precede disability decisions. The present case is illustrative. Here, before the case was submitted for decision on the degree of permanent disability, the Bureau issued an order deferring a determination of petitioner's vocational rehabilitation needs "until clarification has been made by the WCAB as to the extent of disability." No party objected. Petitioner does not, nor could he, assert that there was any error in the timing of the disability hearing.

Of more significance, the Board's substantive rationale for denying any reopening of the disability phase in this case is persuasive for several reasons. First, as noted, petitioner failed to avail himself of an administrative opportunity to resolve any ambiguities. Second, there was conflicting evidence. While petitioner, at the hearing on permanent disability, presented evidence from Dr. Dansker, a rehabilitation counselor, who opined that few, if any, jobs would be available to petitioner because of his medical condition, the administrative law judge relied on competent contrary evidence that petitioner was not totally disabled. The judge noted that "The percentage of permanent disability is not the equivalent of a prediction as to whether an injured employee will, in fact, resume employment. Practically all individuals have inherent limitations with respect to such factors as education, intelligence, personality, stamina, or motivation which preclude certain employment areas from their consideration whether or not they have been injured . . . . The test concerns the ability to compete with other individuals, not the likelihood of finding and holding a job." Following this original decision, petitioner sought reconsideration which was denied by the judge and by the Board; the Court of Appeal also denied his subsequent petition for writ of review.

The decision of the Bureau was based on information from Dr. Dansker which previously had been presented at the hearing on the degree of permanent disability. *No new evidence* was presented to the Bureau which concluded, based on Dr. Dansker's opinion, that although petitioner was medically eligible for rehabilitation benefits, it was the Bureau's "impression that [he] may be unable to be returned to suitable gainful employment *via the assistance of the vocational rehabilitation services.* " (Italics added.)

The majority reasons that despite the fact that Dr. Dansker's material had already been presented to the administrative law judge, the rehabilitation decision itself independently created new grounds for reopening. The flaw in this analysis is that nothing in the original disability determination suggested that either the judge or the Board there relied upon any expectation that petitioner would qualify for rehabilitation benefits in reaching the determination of partial disability. An employee is not required to seek rehabilitation. Nor does the statutory provision for rehabilitation benefits require that unless such benefits are appropriate for a particular employee, permanent total disability must be found. While the rehabilitative potential of an employee may well be relevant in the determination of the degree of permanent disability, qualification for the Bureau's services in no sense is a precondition to a finding of partial as opposed to total disability.

Labor Code section 4660, subdivision (a), provides that in determining the applicable percentage of permanent disability "account shall be taken of the nature of the physical injury or disfigurement, the occupation of the injured employee, and his age at the time of such injury, consideration being given to the diminished ability of such injured employee to compete in an open labor market." The administrative law judge in the original proceedings made clear that he was relying on petitioner's condition *at the time of the hearing.* At no point did the judge indicate that he anticipated petitioner would be able to undertake and complete rehabilitative training through the Bureau. Nor did the judge suggest that his decision that petitioner was partially rather than totally disabled was affected by any expectation that petitioner would undergo such training. (Compare *Partenheimer* v. *Fontainebleau Hotel* (Fla. 1974) 291 So.2d 1.)

In conclusion, because (1) the original determination of partial disability did not rely on any expectation that petitioner would successfully undertake rehabilitation, and (2) the Bureau's determination that petitioner was ineligible for its services rests upon the same information which was considered by the judge who determined the degree of permanent disability, the Board's order denying reconsideration may have been justified substantively.

However, we need not, and should not, consider the issue with the case in its present posture. The majority's discussion of whether the Bureau's order provides "good cause" for reopening is mere speculation in the absence of an appeal. More importantly, the Board has, as indicated, expressed its belief that any inconsistencies between the disability and rehabilitation determinations may best be resolved in an appeal of the Bureau's decision here. I would leave the determination in the first instance to the administrative agency charged with responsibility for reconciling such differences, and defer judicial comment until an actual controversy has been presented.

Respondents' petition for a rehearing was denied October 6, 1983, and the opinion was modified to read as printed above. Grodin, J., did not participate there. Richardson, J., was of the opinion that the petition should be granted.