[No. B087842. Second Dist., Div. Six. Nov. 16, 1995.]

WHEELER & BEATON, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and PACIFIC GAS
AND ELECTRIC COMPANY , Respondents.

COUNSEL

Wheeler & Beaton and Craig A. Kingscott for Petitioner.

Vincent Bausano for Respondents.

## OPINION

**GILBERT, J.**—A law firm performs services which significantly increase the benefits received by an injured worker. We hold that under such circumstances it is error to apply the *Goler*[1] rule in setting the attorney fees. We therefore annul the decision of the Workers' Compensation Appeals Board (Board) denying reconsideration of the attorney fees awarded.

### FACTS

On February 16, 1990, 38-year-old Dan Tomlinson was employed by Pacific Gas Electric (PG&E) when he fell facedown approximately 20 feet

---

[1] *Goler* v. *W & J Sloane Company* (1979) 44 Cal.Comp.Cases 1065.

from a ladder. He broke his leg and suffered facial injuries. Approximately three hours after the fall, he suffered the first of a recurring series of seizures.

The law offices of Wheeler & Beaton (petitioner) filed a workers' compensation claim on behalf of Tomlinson on December 27, 1990. When Tomlinson developed symptoms indicating serious psychological impairment, petitioner amended the claim to include psychiatric injury.

On February 22, 1992, psychiatrist James Wells reported that Tomlinson's condition was permanent and stationary and that his level of impairment in performing various work functions fell into the categories of none, slight, and moderate. Tomlinson attempted to participate in vocational rehabilitation, but was unable to do so because of his extreme fear of being in an unfamiliar environment and of associating with other people.

On May 13, 1993, Dr. Wells reported that Tomlinson's condition had deteriorated, but that he was still only partially disabled, not totally disabled.

Petitioner deposed Dr. Wells on August 11, 1993. Wells testified that Tomlinson's "fear and avoidant behavior would greatly impinge upon his ability to function in a workplace in proximity with other people." When asked if Tomlinson would be able to participate in a job interview, Dr. Wells answered: "For him to present himself independently and say, 'I would like a job' at the time that I saw him seemed almost unthinkable." Petitioner then unsuccessfully sought a stipulation from PG&E that Tomlinson was permanently totally disabled.

Petitioner tried to convince Tomlinson to attempt rehabilitation again, but Tomlinson was unable to do so. At petitioner's request the rehabilitation unit issued a ruling that Tomlinson was unable to benefit from rehabilitation services. Relying on *LeBoeuf* v. *Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 234 [193 Cal.Rptr. 547, 666 P.2d 989], which found that preclusion from vocational retraining is a significant factor in evaluating employability, petitioner sought a hearing to determine the degree of permanent disability.

At the June 23, 1994, hearing, Tomlinson and his wife testified that he only left their home on rare occasions and then often suffered panic attacks. It required about 12 conversations with his psychiatrist in order for him to keep a dental appointment.

Rehabilitation consultant Edgar Breffitt testified that he had considered the reports of Dr. Wells and the rehabilitation counselor. He opined that "for

all practical purposes[,] [Tomlinson] could not be employed in the open labor market."

Based on the deposition of Dr. Wells and the hearing testimony, the workers' compensation judge (WCJ) found Tomlinson totally permanently disabled because his psychiatric injury precluded him from work in the open labor market. The WCJ awarded Tomlinson permanent disability indemnity payments of $266 per week for life. He found that a "reasonable attorney's fee is $10,500."

Petitioner sought reconsideration, arguing that because of the work required and the result obtained, an attorney fee of 12 percent of the present value of Tomlinson's award was justified. Petitioner had advised Tomlinson to turn down PG&E's settlement offer of $114,000. Petitioner noted that, because of Tomlinson's probable life expectancy of at least 30 years, the permanent disability indemnity payments could total more than $400,000. Petitioner also called attention to the difficulty of representing Tomlinson because of his psychiatric disability, which made communication difficult.

The petition for higher fees was not accompanied by proof of service on Tomlinson of written notice of the attorney's adverse interest and of Tomlinson's right to see independent counsel. This is required by California Code of Regulations, title 8, section 10778.[2]

The WCJ's report on reconsideration was adopted by the Board in denying reconsideration. The Board also noted that the petition "is subject to dismissal for failure to comply with WCAB Rule 10778." The WCJ's report stated that the fees were based on the *Goler* case. *Goler* held that, in a case of average complexity in which a worker is rated totally and permanently disabled, the attorney is entitled to a fee based on 621.25 weeks of permanent disability benefits.

The WCJ said he relied on the policy and procedural manual of the Workers' Compensation Appeals Board in finding that this was not a case of above average complexity.[3]

The WCJ stated: "The present case did not involve any of the circumstances described in subparagraphs (a), (c), or (d). [¶] The only factual

---

[2]All further statutory references are to California Code of Regulations, title 8, unless otherwise stated.

[3]Section 6.8.4 of the policy and procedure manual states that cases of above average complexity "include but are not limited to: (a) cases establishing a new or obscure theory of injury or law; (b) cases involving highly disputed factual issues, where detailed investigation, interrogation of prospective witnesses, and participation in lengthy hearing are involved; (c) cases involving highly disputed medical issues; (d) cases involving multiple defendants."

dispute in this case was the degree and extent of permanent disability. . . . Dr. Wells was deposed for 55 minutes, for which petitioner presumably received a separate attorney's fee. . . . The petitioner questioned the applicant and his wife as prospective witnesses. These do not constitute extraordinary services or elevate this case to one of above-average complexity."

In response to applicant's petition for review, the Board filed a letter with this court listing the following reasons for denying reconsideration: (1) failure to comply with the notice requirement of section 10778; (2) "the reasons stated in the trial judge's report, which indicated that permanent disability had been the only major disputed issue in the case, that the parties had used agreed medical examiners to resolve that issue, that the case was not one of above-average complexity, and that the legal services performed were not extraordinary[;]" (3) the fee "of $10,500 is substantial and consistent with petitioner's services reflected in the record[;]" (4) the life expectancy of someone with Tomlinson's injuries is uncertain and does "not necessarily correspond with actuarial projections for the average individual[;]" (5) *Lawrence Drasin & Associates* v. *Workers' Comp. Appeals Bd.* (1992) 3 Cal.App.4th 1564 [5 Cal.Rptr.2d 215], applies only to cases of above average complexity; and (6) *Goler* is still "relevant in cases of average complexity such as this."

In response to the Board's letter, petitioner filed a letter stating that Tomlinson was notified as required by section 10778 and that petitioner inadvertently failed to file a copy of the letter with the request for reconsideration of attorney fees. A letter to Tomlinson, which complies with section 10778, was attached to petitioner's response.

DISCUSSION

I.

■ Petitioner failed to strictly comply with the requirements of section 10778. He did not file a proof of service showing he had served Tomlinson with the request for higher attorney fees. Nevertheless, it appears that Tomlinson was properly notified of the request. Section 10778 states: "Failure to . . . notify the applicant *may* constitute grounds for dismissal of the request for increase in fee." (Italics added.) This language indicates that dismissal is at the Board's discretion. Here, the Board did not dismiss the request for fees based on section 10778 and merely noted that it could have done so. Therefore, Petitioner's failure to comply with section 10778 in a timely manner does not preclude consideration of whether petitioner was awarded a reasonable attorney fee.

## II.

Prior to April 1, 1974, a finding of permanent total disability resulted in an award of 621.25 weeks of permanent disability indemnity. After that date, a permanently totally disabled worker was entitled to lifetime payments of permanent disability benefits based on the temporary disability rate.

In *Goler*, the Board stated it "was not persuaded that the latter circumstance entitles an applicant's attorney to a fixed percentage of the lifetime award . . . ." The Board concluded that the guideline percentages should be applied to "the amount of permanent disability indemnity which would have been awarded before April 1, 1974[,] or 621.25 weeks of permanent disability indemnity." (*Goler v. W & J Sloane Company, supra*, 44 Cal.Comp.Cases at p. 1069.) The Board indicated that basing fees on the actual value of the award would result in a windfall to attorneys.

In *Lawrence Drasin & Associates v. Workers' Comp. Appeals Bd., supra*, 3 Cal.App.4th 1564, the reviewing court found that, "in a case of above-average complexity, the *Goler* limitation need not be followed[,]" but noted that it was not determining "whether the *Goler* formula . . . is appropriate in cases of average complexity." (*Id.* at p. 1573.)

Petitioner argues that, in light of the Board's policy of awarding attorney fees of 9 to 12 percent for cases of average complexity, the fees awarded in this case were inadequate. Petitioner estimates that, based on Tomlinson's life expectancy and a discount factor of 3 percent, the present value of the award is approximately $270,000; 9 to 12 percent of that amount is $24,300 to $32,400. The $10,500 fee awarded is less than 3.9 percent of the estimated present value.

Petitioner points out that 9 to 12 percent of the settlement offer of $114,000 is $10,260 to $13,680. Thus, if petitioner had not performed the extra services required to obtain the significantly higher benefits, petitioner would have received approximately the same or more in fees than were eventually awarded by the WCJ.

The WCJ was in the best position to determine the value of petitioner's services to Tomlinson, but here his award of $10,500 was inadequate. He apparently applied the *Goler* rule without giving full consideration to the factors listed in section 10775.

Section 10775 provides in pertinent part: "In establishing a reasonable attorney's fee, the workers' compensation judge . . . shall consider the [¶]

(a) responsibility assumed by the attorney, [¶] (b) care exercised in representing the applicant, [¶] (c) time involved, [¶] (d) results obtained."

In this contested case petitioner performed services which were of substantial value in obtaining a far better benefit than Tomlinson would have received had he not been found to be totally disabled. Petitioner did the following: deposed Dr. Wells with sufficient skill to overcome his opinion that Tomlinson was only partially disabled; obtained a ruling from the rehabilitation unit which helped establish Tomlinson's inability to compete in the labor market; participated in settlement negotiations with PG&E; and prepared for and participated in a hearing which convinced the WCJ that Tomlinson was totally disabled.

In some cases attorneys will spend more time representing a client than was spent here, and yet will receive a smaller fee than was awarded here. But time is not the only factor to be considered in awarding fees. Here, because of Tomlinson's fragile condition, petitioner had to exercise great care in representing him. Petitioner assumed the responsibility of advising Tomlinson to turn down a sizable settlement offer, and succeeded in obtaining a result far in excess of that offer. Section 10775 requires that these factors be considered in awarding fees. The *Goler* rule is not applicable in these circumstances.

We acknowledge that, in some cases, "a fee in the range of 9 to 12 percent of the award of permanent disability would be excessive, for example, when there is little in dispute and little time, effort or skill involved." (*Morgan, Beauzay, Hammer, Ezgar, Bledsoe & Rucka* v. *Workers' Comp. Appeals Bd.* (1976) 59 Cal.App.3d 353, 356 [130 Cal.Rptr. 661].) In such cases, the *Goler* rule can be applied in setting the proper fee. Section 6.8.4 of the Board's policy and procedural manual states: "In cases of below average complexity, the fee applicable to all benefits . . . may range downward from the 9 percent-12 percent range to as low as 1 percent."

■  Attorneys "are entitled to have the [WCJ and the Board] carefully appraise the value of the services which are shown to have been rendered." (*Bentley* v. *Industrial Acc. Com.* (1946) 75 Cal.App.2d 547, 549 [171 P.2d 532].) Attorneys should receive reasonable compensation for the work required to obtain the best possible result for their clients. It is to the benefit of the clients that attorneys receive appropriate compensation for the work performed and the results obtained.

■  "On remand, the Board must adequately consider and discuss the criteria listed in California Code of Regulations, title 8, section 10775 and

the Board's own guidelines on attorney fees . . . . The Board should also consider whether, in view of the extent and quality of the representation of applicant in the present case [and the results obtained], the . . . attorney fee . . . should be computed based on a percentage of the [present value] of the lifetime award of total permanent disability indemnity at the total permanent disability indemnity rate." (*Lawrence Drasin & Associates* v. *Workers' Comp. Appeals Bd.*, *supra*, 3 Cal.App.4th at pp. 1573-1574.)

The decision by the Workers' Compensation Appeals Board denying reconsideration of the award of attorney fees is annulled, and the Board is directed to award attorney fees in accordance with the views expressed herein.

Stone (S. J.), P. J., and Yegan, J., concurred.